ANTON N. HANDAL (Bar No. 113812)
thandal@murchisonlaw.com
PAMELA C. CHALK (Bar No. 216411)
pchalk@murchisonlaw.com
Murchison & Cumming LLP
Symphony Towers
750 B. Street Suite 2550
San Diego, California 92101
Tel: 619.230.6942 or 619.544.6838
Fax: 619.544.1568

Attorneys for GOPHER MEDIA LLC (formerly known as Local Clicks), dba Doctor Multimedia

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPHER MEDIA LLC (formerly known as Local Clicks), dba Doctor Multimedia, a Nevada Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Modern Doc Media, a California business entity; The Modern Media Group LLC, a California limited liability company; Andrew Hoffman, an individual;and Does 1-10<br><br>Defendants. | CASE NO.: 3:22-cv-00131-TWR-BLM<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **MISAPPROPRIATION OF TRADE SECRETS (UNDER 18 U.S.C. §§ 1836, et seq.)**<br>2) **MISAPPROPRIATION OF TRADE SECRETS (UNDER CALIFORNIA UNIFORM TRADE SECRETS ACT);**<br>3) **UNFAIR BUSINESS PRACTICES;**<br>4) **FALSE ADVERTISING UNDER SECTION 43(a) OF THE LANHAM ACT;**<br>5) **COMMERCIAL DEFAMATION/TRADE LIBEL;**<br>6) **TRADEMARK INFRINGEMENT;**<br>7) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN;**<br>8) **FRAUD – INTENTIONAL AND NEGLIGENT (INCLUDING CONCEALMENT);**<br>9) **BREACH OF CONTRACT; and,** |

-1-

**10)   CYBERSQUATTING PURSUANT to 15 U.S.C.A. § 1125(d);**

**JURY DEMANDED**

**COMES NOW** PLAINTIFF GOPHER MEDIA LLC formerly known as FKA Local Clicks), dba Doctor Multimedia (hereafter "Doctor Multimedia" or "DMM" or "Gopher Media LLC" or "Plaintiff") who complains and alleges as follows against Defendant, Modern Doc Media ("MDM"), a California business entity; The Modern Media Group LLC ("MGM"), a California liability company; Andrew Hoffman,  and Does 1-10  (collectively the "Defendants" or "MDM") as follows:

**THE PARTIES**

1.    At all times relevant herein, Plaintiff GOPHER MEDIA LLC (formerly known Local Clicks), dba Doctor Multimedia (hereafter "Doctor Multimedia" or "DMM" or "Gopher Media LLC") was and is a limited liability company incorporated in the State of Nevada with an address of 4471 Dean Martin Drive, # 2009, Las Vegas, Nevada 89103.   Doctor Multimedia also operates and does business in the State of California, County of San Diego, City of La Jolla from an office located at 8070 La Jolla Shores Drive, # 528, La Jolla, CA 92037.

2.    Upon information and belief and thereupon so alleged, at all times relevant, Defendant Modern Doc Media, ("MDM") is and was a California business entity located and doing business in the City of San Diego, County of San Diego, State of California. Upon information and belief and thereupon so alleged, at all times relevant MDM's address was and is 7455 Caminito Rialto, San Diego CA

92037. Upon information and belief and thereupon so alleged,  MDM is not registered with the California Secretary State or any secretary of state in the United States. Upon information and belief and thereupon so alleged, as such,  MDM has no capacity to defend itself or sue in this matter and/or standing to defend or sue in this case. Upon information and belief and so alleged, Defendant MDM committed the acts complained of herein with the intention of causing effects in the County of San Diego, State of California.  Further, Plaintiff alleges that Defendant MDM: (1) did and does business in the State of California with respect to causes of action arising out of that business; (2) did business in the State of California, before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of California with respect to causes of action that do not arise from that business, but said business  is so continuous and substantial as to make the exercise of jurisdiction reasonable over it.

3.      Upon information and belief and thereupon so alleged, at all times relevant, Defendant The Modern Media Group LLC ("MDG") is and was a California business entity located and doing business in the City of San Diego, County of San Diego, State of California. Upon information and belief and thereupon so alleged, at all times relevant MDM's address was and is 5755 Oberlin Drive, Suite 301 San Diego, CA  92121. Upon information and belief and thereupon so alleged,  MDM is not registered with the California Secretary State or any secretary of state in the United States. Upon information and belief and thereupon so alleged, as such,  MDM has no capacity to defend itself or sue in this matter and/or standing to defend or sue in this case. Upon information and belief and so alleged, Defendant MDG committed the acts complained of herein with the intention of causing effects in the County of San Diego, State of California.  Further, Plaintiff alleges that Defendant MDG: (1) did and does business in the State of California with respect to causes of action arising out of that business; (2) did business in the State of California, before this action was brought with respect to causes of action

*FIRST AMENDED COMPLAINT*                              *CASE NUMBER 3:22-CV-00131-TWR-BLM*

arising out of that business; and/or (3) does business in the State of California with respect to causes of action that do not arise from that business, but said business  is so continuous and substantial as to make the exercise of jurisdiction reasonable over it.

4.    Upon information and belief and thereupon so alleged, at all times relevant, Defendant Andrew Hoffman ("Hoffman") is an individual residing in and doing business in the City of San Diego, County of San Diego, State of California. Upon information and belief and so alleged, Defendant Hoffman committed the acts complained of herein with the intention of causing effects in the County of San Diego, State of California.  Further, Plaintiff alleges that Defendant Hoffman: (1) did and does business in the State of California with respect to causes of action arising out of that business; (2) did business in the State of California, before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of California with respect to causes of action that do not arise from that business, but said business  is so continuous and substantial as to make the exercise of jurisdiction reasonable over him.

5.    The complete and true names, involvement and/or capacities, whether individual, corporate, professional, or otherwise, of the Defendants  are not presently fully known and/or are unknown to the Plaintiff who, therefore, sue said Defendants under such fictitious names. The true names and capacities, whether individual or otherwise, of these unknown defendants are unknown to Plaintiff, who use such fictitious names. Plaintiff is informed and believe that each of the Defendants is responsible in some manner for the acts or omissions alleged in this complaint, or otherwise caused them damages. Each of the Defendants was the agent or employee of the other Defendants, and in doing the acts alleged in this Complaint was acting in the course and scope of such agency and employment. Each of the defendants engaged in, joined in, conspired, and aided and abetted the other defendants in carrying out the wrongful acts alleged in this Complaint, and each defendant ratified

and authorized the wrongful acts of the other Defendants. Plaintiff requests leave of this Court to amend this Complaint to set forth the true names, involvement, and/or capacities, whether individual, corporate, professional, or otherwise, when the same have been ascertained or adequate discovery is produced, provided and/or obtained. Plaintiff is further informed, believe, and based thereon allege that the unknown defendants have aided, abetted, directly or actively participated in, and/or ratified the conduct complained of herein. Plaintiff further alleges that all of the unknown defendants are responsible for and are a direct and legal cause in some manner of the events, happenings, tortuous conduct, malfeasance and damages complained of herein or referred to, which caused the injuries and damages to Plaintiff as set forth in this Complaint.

## JURISDICTION AND VENUE

6.      Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 5 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

7.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the claims at issue are governed by the laws of the United States, specifically the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, et seq. and related statutes.

8.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over other claims brought by Plaintiff because they form part of the same case or controversy as the claims over which this Court has original subject matter jurisdiction.

9.      This is an action for unfair competition is joined with and substantially related to Plaintiff's claim of false designation of origin, which claim arises under the federal trademark laws (15 U.S.C.A. §§ 1051 et seq.). This is also a civil action which arises under Section 43(a) (15 U.S.C.§1125(a)) of the United States Trademark Act. Jurisdiction is based upon 15 U.S.C. Section 1121(a) and 28 U.S.C.

*FIRST AMENDED COMPLAINT*                          *CASE NUMBER 3:22-CV-00131-TWR-BLM*

Section 1331.Accordingly, this Court is also vested with subject matter jurisdiction under 15 U.S.C.A. § 1121, 15 U.S.C.§1125, and 28 U.S.C.A. § 1338.

10.     This Court has personal jurisdiction over Defendants because they reside, do business in, are located at, and/or are domiciled in the City of San Diego, County of San Diego, State of California.

11.     Venue in this judicial district is appropriate pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this district. Separately, venue is also found pursuant to 28 U.S.C.§1391(b)(3) in that all Defendants are subject to the Court's personal jurisdiction and because Defendants reside in and are domiciled in California.

## NATURE OF THE ACTION

12.      Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 11 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

13.     This is an action for misappropriation of trade secrets, civil conspiracy, trade libel, trademark infringement, false advertising and unfair competition, under federal and state law against Defendants.

14.     Defendant MDM competes directly against DMM's business in the online website services and website marketing market. Rather than compete fairly, Defendant MDM, its officers, agents, and employees are engaged in an unfair and deceptive campaign to convince customers of the online website services and website marketing market to terminate business relations with Plaintiff or not engage in any business with them at all, to steal customers from DMM by deceptive marketing, and to cause consumer confusion by using a business name similar to DMM's name.

15.     Defendant Hoffman was and is at all times relevant an officer, employee, and agent of MDM and MDG. Upon information and belief and thereupon so alleged, Hoffman authorized, directed, approved of, and engaged in

*FIRST AMENDED COMPLAINT*                    *CASE NUMBER 3:22-CV-00131-TWR-BLM*

the acts complained herein on his own behalf as well as on behalf of MDM and MDG.

16.     Defendants have embarked in an unlawful campaign to convince potential and actual clients to stop using Plaintiff's services or be Plaintiff's clients alleging that Plaintiff's services are inferior, Plaintiff is untrustworthy, Plaintiff is not modern, and Plaintiff engages in deceptive marketing practices.  Such allegations are maliciously false.  Defendants further have recruited or tried to recruit former or present employees of Plaintiff not only to persuade them to quit working for Plaintiff and work for MDM, but also to persuade and pay former and current employees of Plaintiff to misappropriate Plaintiff's Trade Secrets so that MDM can unfairly use them in its business.

17.     Defendants' unlawful conduct is causing and will continue to cause harm to Plaintiff. On information and belief, Plaintiff has lost sales and relationships with its clients as a result of Defendants' conduct and campaign of deception. This conduct, if not enjoined, will cause irreparable harm to Plaintiff's business relationships.

## GENERAL ALLEGATIONS
## RELEVANT TO ALL CAUSES OF ACTION

18.      Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 17 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

## Doctor Multimedia

19.     Gopher Media LLC was formerly known as Local Clicks.

20.     Doctor Multimedia is the dba of Gopher Media LLC.

21.     Doctor Multimedia is a digital marketing agency which provides marketing and social media services to professionals including, medical doctors, dentists, and others.  It helps small businesses grow their online presence through paid and organic search enhancement. It gives small practices a bigger footprint on

the world-wide web. Doctor Multimedia handles social media and reputation management, website content creation, email marketing, and SEO optimization for medical and veterinary professionals.

22.     Doctor Multimedia also handles the management of their clients' Pay Per Click (PPC) campaigns and Search Engine Optimization (SEO) efforts, to help their business grow online while allowing the busy professional to focus on the countless other challenges they face. Services include taking care of the research, building, optimizing, and analyzing a client's web presence and then suggesting ways to increase that presence.

23.     As part of their business, Plaintiff has generated trade secrets ("Trade Secrets") and confidential and proprietary information that are the property of Plaintiff. All of Plaintiff's Trade Secrets were and are highly confidential. Plaintiff's Trade Secrets include but are not limited to the proprietary, confidential information related to its pricing information; website design strategies, sales presentation information; sales strategies; marketing strategies; client lists; convention and meeting events list(s); sales scripts; knowledge of who the key employees are within the companies of their clients or potential clients; and, information concerning the existence, status, and/or the substance of confidential business discussions between Plaintiff and potential or actual clients.

24.     Plaintiff's information concerning its clients and prospective clients contained within its client lists ("Client Lists") is highly confidential Trade Secret information. Plaintiff's Client Lists include information such as the identity of key decision makers, among other things. Plaintiff has devoted labor and an extensive amount of time cultivating its clients, developing client relationships, and marketing their businesses and services to their highly competitive, niche industries. Plaintiff has expended time and money developing their Client Lists and the confidential information contained therein.

25.     Plaintiff has expended time and money developing its websites, website

*FIRST AMENDED COMPLAINT*                    CASE NUMBER 3:22-CV-00131-TWR-BLM

strategies, marketing strategies, business plans, and the confidential information contained therein and/or related thereto.

26.     All of Plaintiff's Trade Secret information to include but not limited to their Client Lists was not intended to be disclosed outside of Doctor Multimedia. Doctor Multimedia keeps such information highly confidential, does not release it to the public, and took reasonable steps to safeguard this information from disclosure. These pieces of confidential, proprietary information had independent economic value as they reflected the service needs, technical specifications/information, and pricing terms, among other things, for Doctor Multimedia and/or its clients as well as potential clients. They also revealed Doctor Multimedia's strategic and proprietary information.

## Hoffman

27.     Hoffman previously worked for Plaintiff.  Hoffman was terminated for poor job performance, poor attitude, and poor work ethic which occurred for over an 8 month span.

28.     Hoffman later filed a lawsuit against Plaintiff.  That lawsuit was settled and two settlement agreements (collectively "Settlement Agreement") were entered into by Hoffman and Plaintiff on or about February 15, 2021. Hoffman prior to the settlement, during settlement negotiations or prior to the settlement agreement being finalized or executed, intentionally failed to disclose that he had started one or more competing businesses to include MDM and MDG.

29.     Upon information and belief and thereupon so alleged, Hoffman first started MDM and MDG a few months prior to entering the on or about November 2, 2020.  Upon information and belief and thereupon so alleged, he registered MDG with the California Secretary of State on or about November 2, 2020 (but did not register MDM).

30.     Upon information and belief and thereupon so alleged, Hoffman intentionally and fraudulently hid this information from Plaintiff so that Plaintiff

would be induced by fraud to enter into the settlement agreement. If Plaintiff had known that Hoffman had started one or more competing entities to include MDM and MDG, Plaintiff would have never entered into the Settlement Agreement.

31.     Hoffman now lists and represents himself as the CEO of MDM and agent of MDG.

32.     Upon information and belief and thereupon so alleged, Hoffman has breached the Settlement Agreement.

33.     Among other things, Hoffman represented and warranted that he had no desire to solicit Plaintiff's customers/clients or injure Plaintiff's business. Accordingly, Hoffman agreed that he would not affirmatively or actively solicit business away from Plaintiff, but may continue to conduct business in the normal course. Hoffman also agreed that he would not directly or indirectly, affirmatively or actively, solicit known clients of Plaintiff to do business with them.

34.     Hoffman also agreed that he would not engage in any disparagement of Plaintiff, whether it be by written or oral communication, directly or indirectly. He further agreed that he would not suggest that Plaintiff's employees, friends or associates write disparaging reviews or comments about the other or their counsel, on-line, on social media or otherwise.

35.     Hoffman also agreed to keep the terms of the Settlement Agreement confidential.

36.     Upon information and belief and thereupon so alleged, Hoffman has breached the Settlement Agreement repeatedly by: 1) actively soliciting current clients of Plaintiff on behalf of MDM; 2) disparaged Plaintiff, its officers, agents, and its employees; and, 3) disclosing matters agreed to be kept confidential to include the terms of the Settlement Agreement.

## **MDM**

37.     Upon information and belief and thereupon so alleged, MDM and DMM are competitors that operate in the highly competitive online healthcare

services  and/or online website services and website/design marketing market.

38.     Upon information and belief and thereupon so alleged, MDM routinely engages in an intentional, deliberate practice of disparaging and libeling its competitors or anyone it believes may or does compete with it.

39.     Upon information and belief and thereupon so alleged, MDM has and continues to target Doctor Multimedia customers to steal them from Plaintiff using the Trade Secrets, money, assets, strategies, ideas, website designs, website design plans/strategies, marketing strategies and/or property of Doctor Multimedia to do so.

40.     Defendants are cybersquatters. They exploit and profit from an Internet domain name that is confusingly similar to Plaintiff's famous and distinctive trademark to trick consumers, clients, and potential clients into visiting Defendants' website and utilize Defendants' services. Defendants' website misappropriates Plaintiff's trademarks and use other deceptive tactics to suggest, falsely, that the website and the commercial activities carried on at that website is connected to Plaintiff.

41.     Defendants make money by luring unsuspecting consumers to their website and buying services sold on Defendants' website. Defendants' schemes succeed largely because consumers are deceived into believing they are dealing with Plaintiff or entities affiliated with Plaintiff.

42.     Defendants' schemes infringe on Plaintiff's famous and distinctive trademark and name and confuse the consuming public with respect to whether Defendants and their commercial activities are associated with Plaintiff.

43.     Defendants' schemes also diminish the goodwill associated with Plaintiff and its marks, injure Plaintiff's reputation, interfere with Plaintiff's business, and unjustly enrich Defendants.

44.     Defendants own and operate a website address located at https://moderndocmedia.com.  This domain was registered on August 26, 2020.

Defendants use this website to market, sell, and do business with the public and to compete with DMM.

45.     On this website,  Defendants refer to themselves as "Modern Doc Media."  Upon information and belief and thereupon so alleged, Defendants do this in order to mislead the public and confuse consumers into believing MDM is the same company  as "Doctor Multimedia," is affiliated with "Doctor Multimedia," and/or is related to "Doctor Multimedia." Upon information and belief and thereupon so alleged,  Defendants have done this in order to deceptively divert website traffic, consumers, and potential or actual clients of Plaintiff to MDM so that MDM can steal and take away clients and/or business from Plaintiff.  Upon information and belief and thereupon so alleged,  this strategy of deception and consumer confusion has resulted in at least 4 of Plaintiff's actual clients ending their contracts with Plaintiff in favor of MDM.  MDM has adopted a misleading use of words or names to identify its business and services offered in order to re-direct those consumers searching for Doctor Multimedia to MDM and to confuse consumers that they are doing business with Doctor Multimedia.

46.     Upon information and belief and thereupon so alleged, Hoffman and unknown officers, employees and authorized agents ("Unknown Agents of MDM") of MDM set up, built, operate, and run MDM using the Trade Secrets, intellectual property, assets, money, marketing strategies website designs, website design strategies, proprietary information, business plans, and confidential information of Plaintiff.  The Unknown Agents of MDM are sued herein as Does 1-10 and/or as the alter egos of Defendants to include MDM.

47.     Upon information and belief, Hoffman and Unknown Agents of MDM misappropriated trade secrets of Plaintiff which they now use to the benefit of themselves and MDM.

48.     Upon information and belief, Hoffman and Unknown Agents of MDM created MDM with the intention to compete directly with Plaintiff, using the

trade secrets  of Plaintiff and a trade name/business name intentionally similar to "Doctor Multimedia" to do so.

49.     By incorporating the terms "doc" (as in "doctor") and "media" (short for multimedia/similar to), MDM, upon information and belief, clearly intended and intends to have consumers in the highly competitive, niche market that MDM and Plaintiff compete in to make a false or erroneous connection between MDM and Doctor Multimedia. The likelihood of confusion between the two names, "Doctor Multimedia" and "Modern Doc Media" by consumers in this highly competitive, niche industry is great in light of the great similarity of the names of the two businesses.  This is particularly so if consumers do a search for the domain names of both companies: https://moderndocmedia.com and https://doctormultimedia.com/

50.     Clients, the ability of Plaintiff to maintain the confidentiality of their clients, its unique trademark and name, and its reputations are all key to Plaintiff's success in its highly competitive business.

51.     In an attempt to harm Plaintiff and steal their clients, MDM through its employees including but not limited to the Unknown Agents of MDM, have and continue to make false and disparaging statements concerning Plaintiff.  Indeed, the name "Modern Doc Media" is meant to suggest that MDM is a more modern, newer, and/or better version of "Doctor Multimedia."

52.     In an attempt to harm Plaintiff and steal their clients, MDM through its employees including but not limited to the Unknown Agents of MDM, have used the similar trade name/business name "Modern Doc Media"  in order to confuse consumers, confuse the public, and divert website traffic away from "Doctor Multimedia" and its website.

53.     Upon information and belief and thereupon so alleged, MDM routinely enlists its agents, officers and employees to make disparaging, false, and libelous statements about Plaintiff to potential or actual clients of Plaintiff.  Upon

information and belief and thereupon so alleged, part of MDM's marketing strategy and client retention strategy is to routinely engage in such conduct so that clients will end their business with Plaintiff or will not become Plaintiff's clients in the first place.

54.     Plaintiff is informed and believes that MDM and other MDM employees at the direction and behest of MDM routinely make false and defamatory statements about Plaintiff to cast Plaintiff's business in a bad light and tarnish their image and value.

55.      Defendants and each of them agreed to commit the acts alleged herein by planning and forming a conspiracy to commit the acts alleged herein.

56.     Plaintiff believe that at all times mentioned herein, each wrongful act by Defendants as alleged were done in furtherance of a common design, plan and scheme.  Accordingly, each Defendant conspirator is liable, regardless of the degree of his or her or its activity or relative culpability.

57.     As a direct and proximate result of Defendants' conspiracy to commit that acts alleged herein, Plaintiff has been damaged in an amount to be proven at the time of trial.

## GENERAL ALLEGATIONS ALL DEFENDANTS

58.     The acts of the Defendants are malicious and done with intent to cause injury to Plaintiff. Their conduct as alleged herein evidences a conscious and willful disregard for the rights of Plaintiff. Such conduct being wanton, and malicious entitles Plaintiff to an award of punitive and exemplary damages in an amount to be proven at trial with respect to those causes of action that allow for such damages to be so awarded under the law.

59.     Plaintiff has lost clients, profits, business, goodwill, and suffered other damages as result of the conduct of Defendants. Plaintiff has been damaged in amount of $7 million or more according to proof at time of trial.

60.     Defendants' intentional actions alleged were and are designed to induce

*FIRST AMENDED COMPLAINT*                    *CASE NUMBER 3:22-CV-00131-TWR-BLM*

Plaintiff's clients and key employees to breach their agreements with DMM and/or disrupt Plaintiff's business and dealings with its clients as well as its key employees.

61.    Upon information and belief, Defendants have convinced, inspired, and caused Plaintiff's former and/or current key employees to actually violate their employment agreements with Plaintiff and/or the policies, rules, procedures, and protocols of Plaintiff by, among other things, diverting time from working for Plaintiff in order to assist Defendants: 1) solicit business from Plaintiff's clients for themselves and Plaintiff's competitor, MDM; 2) solicit business from Plaintiff's prospective clients for themselves and Plaintiff's competitor, MDM; 3) replicate, misappropriate, and use confidential Plaintiff's Trade Secrets, ideas, business plan, and marketing strategies so that Defendants and Plaintiff's competitor MDM can acquire Plaintiff's clients and directly compete with Plaintiff; 4) encourage Plaintiff's clients to no longer work with Plaintiff;  5) encourage Plaintiff's clients to delay or halt using Plaintiff's services; and, 6) convince the public, consumers, and Plaintiff's actual or potential clients that "Modern Doc Media" is affiliated with, related to or the same as "Doctor Multimedia."

62.    Upon information and belief and thereupon alleged, the Doe Defendants to the Unknown Agents of MDM secretly, and in violation of their legal, equitable and contractual obligations to Plaintiff, have and continue to solicit Plaintiff's clients in violation of the law and their contractual obligations.

63.    Plaintiff has lost clients, profits, business, goodwill, and suffered other damages as result of the conduct of Defendants.  Plaintiff has been damaged in amount of $7 million or more according to proof at time of trial.

64.    Defendants' conduct constitutes a breach of contract and violates the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq. and the California Uniform Trade Secrets Act.

## FIRST CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS

**<u>(Under 18 U.S.C. §§ 1836, et seq. )</u>**

**(ALL DEFENDANTS)**

65.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 64 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

66.   The DTSA provides for a private right of action. 18 U.S.C. § 1836(b)(1).

67.   As explained herein, Plaintiff own or have the right to use, enforce, and defend the trade secret information. As part of their business, Plaintiff has generated Trade Secrets as alleged above that are Plaintiff confidential and proprietary information.  The Trade Secrets are the property of Plaintiff. All of the Plaintiff's Trade Secrets were and are highly confidential.

68.   All of the Plaintiff's Trade Secrets were and are highly confidential. Plaintiff's Trade Secrets include but are not limited to the proprietary, confidential information related to its pricing information; sales presentation information; sales strategies; marketing strategies; client lists; convention and meeting events list(s); selling scripts; knowledge of who the key employees were; and, information concerning the existence, status, and/or the substance of confidential business discussions between Plaintiff and potential or actual customers.

69.   This information was not intended to be disclosed outside of Plaintiff's businesses. Plaintiff keep such information highly confidential, does not release  it to the public, and took reasonable steps to safeguard this information from disclosure.

70.   These pieces of information had independent economic value as they reflected the customer service needs, customer information, business strategies, marketing strategies, and pricing terms, among other things, for Plaintiff. They also revealed Plaintiff's strategic and proprietary information.

71.   Plaintiff's Trade Secrets and confidential and proprietary business and

*FIRST AMENDED COMPLAINT*                    CASE NUMBER 3:22-CV-00131-TWR-BLM

customer information derive substantial, independent economic value from not being generally known to the public or to its competitors, who could obtain economic value from the information.

72.    Plaintiff has expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.

73.    Plaintiff has taken reasonable steps under the circumstances to safeguard the confidentiality and secrecy of their trade secrets and confidential information. Plaintiff has taken reasonable measures to preserve such trade secret information regarding their trade secrets. The information embodying the trade secret derives independent economic value, actual or potential, from not being generally known or ascertainable through proper means.

74.    Among other things, Plaintiff has required employees to sign agreements and/or conform to policies that include confidentiality provisions and protecting the Trade Secrets, proprietary information, and confidential information of Plaintiff. Plaintiff has instructed their employees to not disclose internal information to third parties. Plaintiff has taken security measures and other measures to protect their Trade Secrets and confidential information in electronic and hard-copy formats.

75.    Unknown Agents of MDM agreed to and acknowledged contracts and policies that include confidentiality and non-disclosure provisions.

76.    Plaintiff's Trade Secrets and confidential information are valuable and important to the operation of its business.

77.    Plaintiff's Trade Secrets and confidential information are not known to competitors, and not readily ascertainable through proper means by competitors. Competitors could profit from the use or disclosure thereof. Plaintiff's Trade Secrets are related to a service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). Plaintiff has used its Trade Secrets to include but not limited to its Client Lists to obtain customers and provide their services across state lines.

78.     Unknown Agents of MDM at the behest of MDM improperly disclosed Plaintiff's Trade Secret information to MDM and others. Defendants to include Unknown Agents of MDM and MDM misused Plaintiff's Trade Secret information to try to secure business for themselves and MDM, which business crossed and continues to cross state lines.

79.     Defendants have engaged in multiple independent violations of the DTSA. Defendants unlawfully misappropriated the Plaintiff's Trade Secrets by improperly using Plaintiff's Trade Secret information for their own personal benefit and/or to injure and/or steal the business and ideas and website designs of Plaintiff.

80.     Defendants' unlawful acquisition of the trade secret information was intended to and did commercially benefit Defendants and/or commercially injure Plaintiff. Defendants continued and continue to use Plaintiff's Trade Secret information for their own personal benefit, for the benefit of MDM or other third parties, and/or to injure Plaintiff.

81.     Plaintiff are informed and believes that Defendants' have and continue to use Plaintiff's Trade Secrets and confidential information for their benefit as well as that of MDM without Plaintiff's consent. Unknown Agents of MDM were recruited, compensated, and encouraged by Defendants and/or MDM to breach their duties to Plaintiff to maintain Plaintiff's trade secret secrecy and disclose Plaintiff's Trade Secrets to MDM for its benefit.

82.     Unknown Agents of MDM had access to Plaintiff's Trade Secrets by virtue of their employment and/or business relationship with DMM.

83.     Defendants improperly misappropriated and accessed confidential Plaintiff's trade secret information in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq. The information that Defendants to include Unknown Agents of MDM stole at the behest of MDM is information that Plaintiff keeps highly confidential and which is not released to or available to the general public. More specifically, Defendants and Unknown Agents of MDM at MDM's

behest misappropriated, acquired through inappropriate means, and used the Trade Secrets of Plaintiff to the advantage of Plaintiff's direct competitor MDM.

84.     On information and belief, Defendants inappropriately used highly confidential Plaintiff's Trade Secret information without Plaintiff's consent to, among other things, obtain new customers and/or take away customers from Plaintiff;  to steal the website designs and/or ideas related the website designs of Plaintiff's websites; to modify its sales strategy; to lure key employees away from Plaintiff to work with MDM all to the economic advantage of Defendants.  Upon information and belief, Defendants did this in order to unfairly take business away from Plaintiff and to prevent Plaintiff from being able to fairly compete in its markets.

85.     The information which the Defendants took has never been publicly disclosed or made available publicly by Plaintiff. Defendants knew or had reason to know that the Plaintiff's Trade Secrets that were acquired as alleged herein constituted or contained protectable trade secrets in that the information had independent economic value, was not generally known to the public or to others who could have obtained economic value from the disclosure or use of the information, and was the subject of reasonable efforts by Plaintiff to ensure the secrecy of such information.

86.     At the time of disclosure or use of Plaintiff's Trade Secrets, Defendants' knew or had reason to know that their knowledge of the trade secret was: (i) derived from or through a person who had utilized improper means to acquire it; or (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

87.     If Defendants are permitted to continue to unfairly compete with Plaintiff as described herein, they will continue to use the Plaintiff's Trade Secrets and confidential information to their advantage, and/or to the advantage of

competitors to include but not limited to MDM and to the irreparable detriment of Plaintiff.

88.  Upon information and belief, Defendants' actions and conduct were willful and malicious, and in conscious disregard of the rights of Plaintiff.

89.  By reason of Defendants' violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq. and related statutes, Plaintiff faces immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

90.  As a direct and proximate result of Defendants' violations of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., Plaintiff has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated precisely, but which exceed $75,000 and are estimated to be $7 million or more. Accordingly, Plaintiff is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees.

## SECOND CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS

### (Under California Uniform Trade Secrets Act)

### (ALL DEFENDANTS)

91.  Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 90 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

92.  As part of its business, Plaintiff has generated Trade Secrets as alleged above that are Plaintiff's confidential and proprietary information. The Trade Secrets are the property of Plaintiff. All of the Plaintiff's Trade Secrets were and are highly confidential.

93.  All of the Plaintiff's Trade Secrets were and are highly confidential. Plaintiff's Trade Secrets include but are not limited to the proprietary, confidential information related to their pricing information; sales presentation information; sales strategies; marketing strategies; client lists; convention and meeting events list(s);

selling scripts; knowledge of who the key employees were; and, information concerning the existence, status, and/or the substance of confidential business discussions between Plaintiff and potential or actual customers.

94.     This information was not intended to be disclosed outside of Plaintiff's business. Plaintiff keeps such information highly confidential, does not release it to the public, and took reasonable steps to safeguard this information from disclosure.

95.     These pieces of information had independent economic value as they reflected the customer service needs, website design strategies, customer information, business strategies, marketing strategies, and pricing terms, among other things, for Plaintiff. They also revealed Plaintiff's confidential strategic and proprietary information.

96.     Unknown Agents of MDM had access to Plaintiff's Trade Secrets by virtue of their employment and business relationships with Plaintiff. Defendants unlawfully gained access to this information from Unknown Agents of MDM at MDM's behest for the benefit of MDM and the other Defendants.

97.     Defendants improperly misappropriated and accessed confidential Plaintiff's trade secret information in violation of the California Uniform Trade Secrets Act.

98.     The information that Defendants stole is information that Plaintiff keeps highly confidential and which is not released to or available to the general public. More specifically, Defendants misappropriated, acquired through inappropriate means, and used the Trade Secrets of Plaintiff to the advantage of Defendants.

99.     On information and belief, Defendants inappropriately used highly confidential Plaintiff's Trade Secret information without Plaintiff's consent to, among other things, obtain new customers and/or take away customers from Plaintiff; to modify its sales strategy; to modify its business negotiations; to lure key employees away from Plaintiff to work with MDM all to the economic advantage of

Defendants and  MDM.  Upon information and belief, Defendants did this in order take business away from Plaintiff and to prevent Plaintiff from being able to compete in its business markets.

100.   The information which the Defendants took has never been publicly disclosed or made available publicly by Plaintiff.

101.   Defendants knew or had reason to know that the Plaintiff's Trade Secrets that were acquired as alleged herein constituted or contained protectable trade secrets in that the information had independent economic value, was not generally known to the public or to others who could have obtained economic value from the disclosure or use of the information, and was the subject of reasonable efforts by Plaintiff to ensure the secrecy of such information.

102.   At the time of disclosure or use of Plaintiff's Trade Secrets, Defendants' knew or had reason to know that their knowledge of the trade secret was: (i) derived from or through a person who had utilized improper means to acquire it; or (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

103.   Defendants knew or had reason to know that the Plaintiff's Trade Secrets they used and misappropriated were trade secrets that did not belong to them and that knowledge of them had not been acquired by accident or mistake.

104.   Defendants will continue to misappropriate Plaintiff's Trade Secrets to their own economic benefit by the wrongful disclosure and use of such information, without the consent of Plaintiff while knowing or having reason to know that they had acquired the Plaintiff's Trade Secrets under circumstances giving rise to a duty on their part to maintain their secrecy.

105.   As a proximate result of Defendants' acts of misappropriation and use of Plaintiff's Trade Secrets, Plaintiff has suffered damages to date based on, among other things, loss of goodwill, damage to its business reputation, and expenses

incurred in their efforts to remedy the effects of Defendants' unlawful conduct, in an amount believed to be $7 million or more.

106. Plaintiff has been harmed by the conduct of Defendants. The misappropriation of Plaintiff's Trade Secrets by Defendants gave and gives them a substantial and unfair competitive advantage over Plaintiff. Investigation is continuing, and the full extent of Plaintiff's harm will be determined at trial.

107. Plaintiff is informed and believes, and based thereon alleges, that Defendants have acted with oppression, fraud, and/or malice, and have deliberately caused and have intended to cause great economic harm to Plaintiff with full knowledge of the wrongfulness of their conduct.

108. Plaintiff is further informed and believes, and based thereon alleges, that Defendants' conduct as alleged above was despicable, was carried on by Defendants with a willful and conscious disregard of Plaintiff's rights, and subjected Plaintiff to unjust hardship. Therefore, Plaintiff should be awarded punitive and exemplary damages sufficient to punish Defendants for engaging in this conduct and to deter similar conduct on their part in the future. Defendants acted with malice, oppression and in conscious disregard of, and with deliberate difference to the harm their conduct might cause, and punitive damages are necessary to deter them from similar conduct in the future.

109. By reason of Defendants' violations of the California Uniform Trade Secrets Act, Plaintiff face immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

110. As a direct and proximate result of Defendants' violations of the California Uniform Trade Secrets Act, Plaintiff has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Plaintiff is entitled to a temporary restraining order and a preliminary injunction, compensatory and exemplary damages, and attorneys' fees.

### THIRD CAUSE OF ACTION

-23-

## **UNFAIR BUSINESS PRACTICES**

### **(ALL DEFENDANTS)**

111.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 110 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

112.   By the acts alleged in the preceding paragraphs, Defendants have committed business acts and practices that are "unlawful" and "unfair" in violation of the Unfair Competition Law ("UCL"), Business & Professions Code§ 17200 et seq.

113.   Specifically, without Plaintiff's consent, Defendants illegally acquired and used for themselves Plaintiff's confidential and proprietary business information to undercut Plaintiff in its highly competitive business market. Such acts impair fair and honest competition and otherwise significantly harms competition in the market for Plaintiff's services. Defendants have used the money, intellectual property, assets, property, Trade Secrets, website designs, business plans, and marketing strategies that they embezzled, converted, stole, and/or misappropriated from Plaintiff to start, create, build, and market MDM, its business, and its website.

114.   Further, Defendants have and continue to use a very similar name to that of Doctor Multimedia—"Modern Doc Media"—in order to cause confusion to consumers and the public between the two companies; in order to divert  and steal business away from Plaintiff; and in order to falsely lead consumers, clients and the public into believing that MDM is affiliated, related, and/or the same as "Doctor Multimedia."

115.   Defendants engaged in unlawful, fraudulent and unfair business acts and practices. Such acts and practices include, but are not limited to, wrongfully depriving Plaintiff of their rightful ownership interests in their money, intellectual property, assets, property, Trade Secrets, website designs, business plans, and marketing strategies.

116.   Defendants' business acts and practices were unlawful and fraudulent in that a reasonable person would likely be deceived by their material concealment and in that Defendants have unlawfully and fraudulently deprived Plaintiff of its rightful ownership interests in their money, intellectual property, assets, property, Trade Secrets, website designs, business plans, and marketing strategies.

117.   Defendants' business acts as alleged herein were unfair in that the substantial harm suffered by Plaintiff outweighs any justification that Defendants may have for engaging in those acts and practices.

118.   Plaintiff will be denied effective and complete remedy absent the relief requested herein.  Plaintiff has suffered and continues to suffer irreparable harm as a result of the activities alleged herein that cannot be adequately remedied at law unless Defendants and all persons acting with them, or on their behalf, are enjoined from engaging in further such acts of unfair competition.

119.   Such acts impair fair and honest competition and otherwise significantly harms competition in the market for Plaintiff's services.

120.   Defendants have been unjustly enriched by such unlawful and unfair practices and in addition to all other relief available should be made to account to Plaintiff for their profits and disgorge the same to Plaintiff.

121.   Plaintiff has been harmed as a result of Defendants' unlawful, unfair and fraudulent business acts and practices. Plaintiff is entitled to (a) recover restitution, including without limitation, all benefits that Defendants received as a result of the unlawful, unfair or fraudulent business acts and practices and (b) an injunction restraining Defendants from engaging in further acts of unfair competition, as alleged herein.

122.   Defendants' acts of unfair competition has rendered Plaintiff incapable of being able to fairly compete for business in their business market(s).  As a result, Plaintiff has lost and continue to lose business and opportunities that they otherwise could have obtained to the detriment of Plaintiff and consumers at large who were

deprived of the value pricing opportunities that Plaintiff could have delivered through open and free channels of business.

**FOURTH CAUSE OF ACTION**

**FALSE ADVERTISING UNDER SECTION 43(a)**

**OF THE LANHAM ACT**

**(ALL DEFENDANTS)**

123.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 122 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

124.   The Lanham Act, 15 U.S.C.A. § 1125(a)(1)(B), prohibits the use in commercial advertising or promotions of "any word, term, name, symbol or device, or any combination thereof, or any … false or misleading description of fact, or false or misleading representation of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." The Lanham Act also authorizes "any person who believes that he or she is or is likely to be damaged by" such a violation to file a civil action for an injunction and compensatory damages.

125.   Defendants, in connection with goods and services distributed in commerce, has made and is continuing to make false, deceptive and misleading descriptions and representations of fact in commercial advertising and promotion, which misrepresent the nature, characteristics and qualities of Plaintiff's goods, services and commercial activities, in violation of 15 U.S.C.A. §§ 1125(a).

126.   Further, Defendants have and continue to use a very similar name to that of Doctor Multimedia—"Modern Doc Media"—in order to cause confusion to consumers and the public between the two companies; in order to divert  and steal business away from Plaintiff; and in order to falsely lead consumers, clients and the public into believing that MDM is affiliated, related, and/or the same as "Doctor Multimedia."

127.   These violations have injured and will continue to injure Plaintiff and the public, causing deception, confusion and damage in an amount that cannot presently be ascertained.

128.   Defendants have and will violate 15 U.S.C.A. §§ 1125(a) by misrepresenting the nature, characteristics, and qualities of Plaintiff's services and business.

129.   These statements have all been made in interstate commerce.

130.   These misrepresentations are material and are reasonably relied on by potential or actual clients seeking the type of services provided by Plaintiff. These representations will cause potential or actual clients of Plaintiff to not do business with Plaintiff.  The misrepresentations are also intended to cause clients to do business with MDM instead of Plaintiff.  These misrepresentations have harmed and will harm Plaintiff in terms of lost revenue and goodwill.

131.   Plaintiff therefore are entitled, under the Lanham Act, to an injunction and damages.

132.   Defendants' acts of false advertising and unfair competition have caused irreparable injury to Plaintiff and, unless restrained, will cause further irreparable injury, leaving Plaintiff with no adequate remedy at law.

133.   By reason of the above, Plaintiff is entitled to permanent injunctive relief against Defendants restraining further acts of false advertising and unfair competition and requiring Defendants to correct its false and misleading statements, and to recover damages caused by reason of Defendants' acts in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## COMMERCIAL DEFAMATION/TRADE LIBEL
### (ALL DEFENDANTS)

134.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 133 of this Complaint as well as all

-27-

allegations stated below in each cause of action in the Complaint.

135.   Defendants' statements as alleged in above, were slanderous per se under California Civil Code Section 46 in that such statements impute to Plaintiff a lack of professional competence, a lack of integrity, and failure to be modern or be up to date.

136.   Among other things, Plaintiff are informed and believe that employees, officers and agents of MDM, including but not limited to the Unknown Agents of MDM, and other MDM employees, on behalf of MDM, contacted multiple clients of Plaintiff and made statements to them that were untrue and defamatory.

137.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, as alleged above Plaintiff has suffered damages to date in an amount not now known.

138.   Plaintiff is informed and believes, and based thereon alleges, that Defendants have acted with oppression, fraud, and/or malice, and have deliberately caused and have intended to cause great economic harm to Plaintiff with full knowledge of the wrongfulness of their conduct.

139.   Plaintiff is  further informed and believes, and based thereon alleges, that Defendants' conduct as alleged above was despicable, was carried on by Defendants with a willful and conscious disregard of Plaintiff's rights, and subjected Plaintiff to unjust hardship. Therefore, Plaintiff should be awarded punitive and exemplary damages sufficient to punish Defendants for engaging in this conduct and to deter similar conduct on their part in the future. Defendants acted with malice, oppression and in conscious disregard of, and with deliberate difference to the harm their conduct might cause, and punitive damages are necessary to deter them from similar conduct in the future.

## SIXTH CAUSE OF ACTION
## TRADEMARK INFRINGEMENT

**(ALL DEFENDANTS)**

140.    Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 139 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

141.    Prior to any acts of Defendants as set forth herein, Plaintiff had selected the mark "Doctor Multimedia" at least as early as 2016 or earlier, for use in identifying  its business.

142.    Plaintiff has used the trademark "Doctor Multimedia" in interstate commerce, beginning at least as early as 2016 or earlier, to identify its business and in advertising its services as well as business.

143.    Plaintiff is the owner of federal trademark for the trademark "Doctor Multimedia" for use to identify Plaintiff's business and the services it provides. (See Exhibit A attached hereto).

144.    Subsequent to Plaintiff's adoption and use of the trademark "Doctor Multimedia" to identify Plaintiff's business, Defendants have used and prominently displayed a mark, business name, trade name, and domain site name similar to "Doctor Multimedia" called "Modern Doc Media" in an attempt to confuse the public, confuse consumers, confuse clients, divert actual or potential clients away from Plaintiff, and/or to disparage Plaintiff by suggesting that MDM is the better, more modern version of Plaintiff's company with whom it is affiliated with.

145.    In violation of 15 U.S.C.A. § 1125(a), Defendants have used or caused to be used the mark "Doctor Multimedia" or the similar name "Modern Doc Media" directly or indirectly in interstate commerce and in a manner that affects interstate commerce including the use of the mark or name "Doctor Multimedia" on its website and/or in advertisement materials relating to its competing business in various states throughout the United States to include California.

146.    Such use of Plaintiff's mark and/or the similar name of "Modern Doc Media" by Defendants is likely to cause confusion to the public and consumers

who may or do believe Plaintiff and MDM are related, affiliated, or the same. Such use of Plaintiff's mark and/or the similar name of "Modern Doc Media" by Defendants falsely suggests that MDM is related to, approved by, or is "Doctor Multimedia." Such use of the mark and the similar name "Modern Doc Media" by Defendants is done with full knowledge of the falsity of such representations and designation of origin, and knowingly suggests falsely that MDM is related or the same business and/or approved by Plaintiff.

147.   In doing the acts set forth above, Defendants have deliberately appropriated the use of the mark with the intent to deceive the trade and public into mistaking and confusing "Doctor Multimedia"  with "Modern Doc Media."

148.    The actions of Defendants, as referred to above, were done for the purpose of unlawfully appropriating and trading on the goodwill, business, clients, and reputation that have been developed by Plaintiff under the trademark "Doctor Multimedia" and such actions constitute not only false representations that the business, website and name of Plaintiff is the same as or related to that of MDM, but also false representations that the name and services of MDM originate or are the same or related to "Doctor Multimedia."

149.   Defendants' actions complained of here constitute a false designation of origin of the source of Defendants' name, website, business, and services as well as unfair competition by Defendants.

150.   The acts and activities of Defendants also constitute a fraud and deception on the public, and the natural and probable tendency of the acts of Defendants are calculated to deceive the public and to pass off the website, name, business and services offered or rendered by Defendants as those of Plaintiff.

151.   Unless Defendants are enjoined from all actions which relate in any manner to the use of the mark "Doctor Multimedia" or any term likely to be confusingly similar thereto in connection with the services provided by Plaintiff to include the use of the name "Modern Doc Media," Plaintiff will suffer immediate

-30-

and irreparable harm and injury.

152.   Defendants have benefited and profited in an unknown amount from the use of the mark "Doctor Multimedia" and the confusingly similar name "Modern Doc Media" as referred to above, and Plaintiff has suffered damages in an amount to be determined at trial but estimated to be at least $7 million.

153.   The above-mentioned acts of Defendants were willful and without any claim of right and were attended by circumstances of fraud, malice, or a wanton and reckless disregard of Plaintiff's 's rights, entitling Plaintiff to exemplary damages.

154.    On information and belief, Defendants' trademark infringement will continue unless enjoined by this Court. Pursuant to 15 U.S.C.A. § 1116, Plaintiff seeks a preliminary and permanent injunction against further trademark infringement by Defendants.

155.   Defendants' acts of trademark infringement have damaged Plaintiff in an amount to be determined at trial. Pursuant to 15 U.S.C.A. § 1117, Plaintiff is entitled to, among other things, seek Defendants' profits, actual damages, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.

156.   Defendants' acts of trademark infringement have been and continue to be deliberate and willful and warrant an award of enhanced damages. Accordingly, Plaintiff is entitled to and seek a finding that this case is exceptional and warrants an award of treble damages and attorneys' fees pursuant to 15 U.S.C.A. § 1117.

## SEVENTH CAUSE OF ACTION

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

### (ALL DEFENDANTS)

157.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 156 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

158.   No later than 2016, long before August of 2020, and long prior to any of the acts of the Defendants complained of in this Complaint, Plaintiff adopted the mark "Doctor Multimedia" as a trademark to designate its business name, website, and website services, said mark being extensively used, advertised and promoted throughout the United States in general and in the State of California in particular.

159.   Since long prior to the acts of Defendants complained of in this Complaint, Plaintiff has extensively and continuously marketed, sold, advertised and promoted its business under the trademark and business name "Doctor Multimedia."

160.   Plaintiff has gained a substantial reputation in its market and the public in connection with its services marketed and sold under the "Doctor Multimedia" trademark.

161.   By reason of the marketing and sale of services under the above trademark, the trade and the public, prior to said acts of Defendants complained of in this Complaint, have come to recognize the trademark "Doctor Multimedia," when used in connection with the digital marketing, website design/marketing and social media services it offers to professionals including, medical doctors, dentists, and others as identifying such as being exclusively supplied by, authorized or affiliated with Plaintiff.

162.   Since 2020 or earlier, Defendants have marketed, distributed, advertised and promoted its business and services in the United States by the name "Modern Doc Media" in order to confuse the public and consumers into believing that MDM and "Doctor Multimedia" are similar, related, or the same and/or that Plaintiff approves of MDM.

163.   The acts of the Defendants of selling, advertising, marketing and/or promoting its business and its service through the use of the trademark "Modern Doc Media" is directed to the same segment of the purchasing public to which Plaintiff directs its business and services.

164.   Defendant's use of the name "Modern Doc Media" and/or use of the trademark "Doctor Multimedia" as alleged above to designate, advertise and/or promote its business, website and services in the United States is likely to cause confusion or mistake or to deceive the purchasers or customers of its services as to the source of origin of Defendants' business, website and services as well as to cause Defendants' services, website and business to be passed off or viewed as those which are provided or authorized by Plaintiff.

165.   Defendants' above-alleged actions constitute the use in connection with services of false or misleading descriptions and representations with respect to the origin, sponsorship or approval of its business, website and services and the publicity therefor by suggesting that such services and business as well as the advertising thereof are connected with or associated, sponsored or affiliated with Plaintiff or that the same truly originated with Plaintiff.

166.   Defendants have caused their business, website, domain name, and services, and the advertising and/or promotion thereof, to enter United States commerce. The misappropriation and use of Plaintiff's "Doctor Multimedia" trademark by Defendants as well as Defendants' other actions described above constitute false and misleading descriptions of fact and representations of fact that are likely to give the public a false impression and to confuse the public as to the source of Defendants' business, services, and website.

167.   Subsequent to Defendants' adoption of the name "Modern Doc Media" to identify its business, website, domain name, and services, Plaintiff's customers of its "Doctor Multimedia" services and business canceled or ended their contracts and business with Plaintiff believing that Plaintiff was the source of the services sold and marketed by Defendants in the United States identified by "Doctor Multimedia" trademark.

168.   Plaintiff is informed and believes and, based on such information and belief, alleges that Defendants adopted and used the name "Modern Doc Media"

with actual knowledge of Plaintiff's long prior use of the "Doctor Multimedia" trademark and with the intent to trade on the reputation and goodwill, history, and reputation of that mark and the Plaintiff's business.

169.   Although Defendants have been requested by Plaintiff to cease selling, advertising and/or promoting the sale of its services and/or marketing its business in the United States through the use of the name "Doctor Multimedia" Defendants have nevertheless, refused said request and have continued to use said mark to advertise, market and promote the sale of its services. This is therefore an exceptional case within the meaning of §35 of the United States Trademark Act, 15 U.S.C. §1117, entitling Plaintiff to recover reasonable attorneys' fees.

170.   The aforesaid actions of Defendants have irreparably damaged Plaintiff and will, unless restrained, continue to so damage the business of Plaintiff and its goodwill, for all of which there is no adequate remedy at law.

## EIGHTH CAUSE OF ACTION
## FRAUD – INTENTIONAL AND
## NEGLIGENT (INCLUDING CONCEALMENT)
## (AGAINST HOFFMAN ONLY)

171.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 170 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

172.   Hoffman filed a lawsuit against Plaintiff.  That lawsuit was settled and two settlement agreements (collectively "Settlement Agreement") were entered into by Hoffman and Plaintiff on or about February 15, 2021. Hoffman prior to the settlement, during settlement negotiations or prior to the settlement agreement being finalized or executed, intentionally failed to disclose that he had started one or more competing businesses to include MDM and MDG.

173.   Upon information and belief and thereupon so alleged, Hoffman first started MDM and MDG a few months prior to entering the on or about November

2, 2020.  Upon information and belief and thereupon so alleged, he registered MDG with the California Secretary of State on or about November 2, 2020 (but did not register MDM).

174.   Upon information and belief and thereupon so alleged, Hoffman intentionally and fraudulently hid this information from Plaintiff so that Plaintiff would be induced by fraud to enter into the settlement agreement. If Plaintiff had known that Hoffman had started one or more competing entities to include MDM and MDG, Plaintiff would have never entered into the Settlement Agreement.

175.   Hoffman now lists and represents himself as the CEO of MDM and agent of MDG.

176.   Upon information and belief and thereupon so alleged, Hoffman has breached the Settlement Agreement.

177.   Among other things, Hoffman represented and warranted that he had no desire to solicit Plaintiff's customers/clients or injure Plaintiff's business. Accordingly, Hoffman agreed that he would not affirmatively or actively solicit business away from Plaintiff, but may continue to conduct business in the normal course. Hoffman also agreed that he would not directly or indirectly, affirmatively or actively, solicit known clients of Plaintiff to do business with them.

178.   Hoffman also agreed that he would not engage in any disparagement of Plaintiff, whether it be by written or oral communication, directly or indirectly. He further agreed that he would not suggest that Plaintiff's employees, friends or associates write disparaging reviews or comments about the other or their counsel, on-line, on social media or otherwise.

179.   Hoffman also agreed to keep the terms of the Settlement Agreement confidential.

180.   Upon information and belief and thereupon so alleged, Hoffman has breached the Settlement Agreement repeatedly by: 1) actively soliciting current clients of Plaintiff on behalf of MDM; 2) disparaged Plaintiff, its officers, agents,

and its employees; and, 3) disclosing matters agreed to be kept confidential to include the terms of the Settlement Agreement.

181.   In or about February of 2021 and specifically on or before February 15, 2021, Hoffman failed to disclose to Plaintiff that he had started one or more competing businesses to include MDG and MDM.   If Plaintiff had known such information, Plaintiff would not have entered into the Settlement Agreement.

182.   Hoffman also represented and agreed not to actively solicit Plaintiff's current clients, disparage Plaintiff or Plaintiff's officers/agents/employees, and that he would keep the terms of the Settlement Agreement.  Plaintiff was induced to enter into the Settlement Agreement based upon these representations.

183.   Hoffman's representations were false.

184.   Hoffman made the foregoing representations knowingly, willfully, and/or with reckless disregard for its falsity.

185.   Hoffman  made the foregoing representations with the intent of inducing Plaintiff to enter into the Settlement Agreement.

186.   Plaintiff, relying on the foregoing misrepresentations, entered into the Settlement Agreement and paid consideration to Hoffman and/or Hoffman's agent.

187.   The representations made by Hoffman were false.

188.   Hoffman knew that the representations were false when he made them.

189.   Hoffman intended for Plaintiff to rely on the representations.

190.   Plaintiff reasonably and justifiably relied on Hoffman's representations.

191.   As a proximate result of Hoffman's fraudulent representations and Plaintiff's reasonable reliance on them, Plaintiff suffered injury to include but not limited to damage to its goodwill, the loss of customers and business, and the inability to fully market, sell, and distribute its services.

192.   Plaintiff has been damaged in amount of $1 million or more according

to proof at time of trial.

193.   Hoffman's conduct was malicious and fraudulent.  Such conduct justifies an award against the Hoffman of punitive and exemplary damages in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(AGAINST HOFFMAN ONLY)**

194.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 193 of this Complaint as well as all allegations stated below in each cause of action in the Complaint.

195.   Hoffman filed a lawsuit against Plaintiff.  That lawsuit was settled and two settlement agreements (collectively "Settlement Agreement") were entered into by Hoffman and Plaintiff on or about February 15, 2021. Hoffman prior to the settlement, during settlement negotiations or prior to the settlement agreement being finalized or executed, intentionally failed to disclose that he had started one or more competing businesses to include MDM and MDG.

196.   Upon information and belief and thereupon so alleged, Hoffman first started MDM and MDG a few months prior to entering the on or about November 2, 2020.  Upon information and belief and thereupon so alleged, he registered MDG with the California Secretary of State on or about November 2, 2020 (but did not register MDM).

197.   Upon information and belief and thereupon so alleged, Hoffman intentionally and fraudulently hid this information from Plaintiff so that Plaintiff would be induced by fraud to enter into the settlement agreement. If Plaintiff had known that Hoffman had started one or more competing entities to include MDM and MDG, Plaintiff would have never entered into the Settlement Agreement.

198.   Hoffman has breached the Settlement Agreement.

199.   Among other things, Hoffman represented and warranted that he had

no desire to solicit Plaintiff's customers/clients or injure Plaintiff's business. Accordingly, Hoffman agreed that he would not affirmatively or actively solicit business away from Plaintiff, but may continue to conduct business in the normal course. Hoffman also agreed that he would not directly or indirectly, affirmatively or actively, solicit known clients of Plaintiff to do business with them.

200.   Hoffman also agreed that he would not engage in any disparagement of Plaintiff, whether it be by written or oral communication, directly or indirectly. He further agreed that he would not suggest that Plaintiff's employees, friends or associates write disparaging reviews or comments about the other or their counsel, on-line, on social media or otherwise.

201.   Hoffman also agreed to keep the terms of the Settlement Agreement confidential.

202.   Upon information and belief and thereupon so alleged, Hoffman has breached the Settlement Agreement repeatedly by: 1) actively soliciting current clients of Plaintiff on behalf of MDM; 2) disparaged Plaintiff, its officers, agents, and its employees; and, 3) disclosing matters agreed to be kept confidential to include the terms of the Settlement Agreement.

203.   Plaintiff and Hoffman had valid settlement agreements as indicated above herein.

204.   Plaintiff has performed all conditions of the agreements on its part to be performed, except to the extent excused therefrom by Hoffman's conduct.

205.   Plaintiff believes and thereon alleges that it has been damaged in amount of $1 million or more according to proof at time of trial.

## TENTH CAUSE OF ACTION
## CYBERSQUATTING PURSUANT to 15 U.S.C.A. § 1125(d)
### (ALL DEFENDANTS)

206.   Plaintiff incorporates as though fully set forth herein the allegations contained above in Paragraphs 1 through 205 of this Complaint as well as all

-38-

allegations stated below in each cause of action in the Complaint.

207.   Defendants own and operate a website address located at https://moderndocmedia.com ("Infringing Domain"). This domain was registered on August 26, 2020.  Defendants use this website to market, sell, and do business with the public and to compete with DMM.

208.   On information and belief, Defendants registered and currently control and use the Infringing Domain.

209.   Plaintiff's "Doctor Multimedia" mark was distinctive at the time Defendants registered and used the Infringing Domain.

210.   The Infringing Domain is confusingly similar to the Doctor Multimedia mark and domain name.

211.   On information and belief, Defendants were aware of the existence of the Doctor Multimedia mark and website name when they registered and began using the Infringing Domain.

212.   On information and belief, Defendants use the Infringing Domain in connection with the sale and promotion of Defendants' own services which directly compete with the goods and services of Plaintiff.

213.   On information and belief, Defendants registered, trafficked in, or used the Infringing Domain in bad faith and with bad-faith intent to profit from the goodwill long that Plaintiff has established in the name Doctor Multimedia, the Doctor Multimedia mark, and the Doctor Multimedia domain name.

214.   On information and belief, Defendants do not have any intellectual property rights or any other rights in the name Doctor Multimedia, the Doctor Multimedia mark, and the Doctor Multimedia domain name.

215.   On information and belief, Defendants have not made any bona fide fair use of the Doctor Multimedia mark on a website accessible under the Infringing Domain.

216.    Defendants' registration, use, or trafficking in the Infringing Domain

constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiff to relief.

217.   The Infringing Domain and website thereon are likely to cause confusion among the consuming public, who will be led to believe that Plaintiff is affiliated with Defendants, and each of them, and/or has approved of Defendants' use and registration of the domain name and the contents contained on the website.

218.   The Defendants' use of the domain name also dilutes the distinctiveness of the name and distinctiveness of Plaintiff's trademark and trade name(s) and will cause confusion by the public when trying to distinguish any services offered by from the goods and services offered by others, including Defendants.

219.   Plaintiffs have no ability to control what is published on Defendant's website or what is fraudulently marketed and sold by Defendants.

220.   Plaintiffs' name is a distinctive and famous mark, and was a distinctive and famous mark at the time the domain name was registered pursuant to the Anticybersquatting Consumer Protection Act of 1999, 15 U.S.C.A. § 1125(d) (referred to below as the "Anticybersquatting Act"), and specifically Section 3002(a) of the Act, 15 U.S.C.A. § 1125(d)(1).

221.   Plaintiff is informed and believes, and on the basis of such information and belief allege, that the Defendants and each of them, have had, and continue to have, a bad faith intent to profit from the Doctor Multimedia name which are each protected as distinctive marks and/or personal names under Section 3002(a) of the Anticybersquatting Act, 15 U.S.C.A. § 1125(d)(1).

222.   Such actions are a violation of Section 3002(a) of the Anticybersquatting Act, 15 U.S.C.A. § 1125(d)(1)(A)(ii)(I), (II); (B)(i)(II), (VI).

223.   By reason of Defendants' acts alleged herein, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

224.   If Defendants are not enjoined and restrained from their use and promotion of the Infringing Domain, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial and irreparable injury that cannot be adequately calculated and wholly compensated by monetary damages. Moreover, under 15 U.S.C. § 1125(d)(1)(C), Plaintiff seeks an injunction ordering Defendants and their registrar to transfer the Infringing Domain to Plaintiff.

225.   By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover its actual damages, costs of the action and Defendants' profits, or statutory damages under 15 U.S.C. 1117, on election by Plaintiff, in an amount of up to $100,000 per domain name infringement.

226.   The above-described acts of the Defendants were willful, entitling Plaintiff to treble damages under 15 U.S.C. § 1117.

227.   This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. 1117.

228.   Finally, Plaintiff seeks a permanent injunction restraining Defendants from registering any domain names containing the terms "doc" or "doctor" regardless of the spacing or hyphenation between the words.

**WHEREFORE**, Plaintiff pray for relief and judgment as follows:

1.      For a temporary restraining order and permanent injunction enjoining Defendants and any person or entity acting in concert with them from:

(a)   soliciting, directly or indirectly, by mail, phone, electronic communication, personal meeting, or any other means, any client of Plaintiff who Defendants dealt with, learned about, or whose name became known to Defendants;

(b)   For a temporary restraining order and permanent injunction enjoining Defendants, and all those in active concert or participation with Defendants (including, but not limited to, officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys,

agents, independent contractors, subsidiaries, related companies, successors, assigns and contracting parties) from distributing, publishing, broadcasting or otherwise disseminating, in any manner or in any medium, any claims stating, suggesting or implying, directly or indirectly, that Plaintiff are not a reputable businesses or that their employees, owners, officers, or agents are not reputable.

(c)     For a temporary restraining order and permanent injunction requiring Defendants to withdraw and recall from its sales representatives and any and all channels of distribution any letters, flyers, advertising, promotional materials, office display materials, or any other matter distributed by it or on its behalf bearing any descriptions or representations constituting false advertising concerning Plaintiff, their services, or their business.

(d)     For a temporary restraining order and permanent injunction requiring Defendants and those in active concert or participation with Defendants (including, but not limited to, officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors,  assigns and contracting parties) to take affirmative steps to dispel such false impressions that have been created by the false advertising campaign described above, including, but not limited to, notifying all clients exposed to the false claims described above that the statements were and are false.

(e)     For a temporary restraining order and permanent injunction requiring Defendants to identify all companies, creditors and/or clients that they distributed disparaging or false information about Plaintiff.

(g)     The Court adjudge and decree that Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, be preliminarily and permanently enjoined from the following activities; and/or

-42-

(h)     For a temporary restraining order and permanent injunction requiring MDM not to send Unknown Agents of MDM to any trade shows or conferences and/or precluding Unknown Agents of MDM from attending any public trade show or conference which will be attended by DMM or Jet for the next two years.

2.     That Defendants and their officers, agents, members, servants, employees, attorneys, confederates, related companies, and all persons acting in concert or participation with it, be enjoined and restrained during the pendency of this action, and permanently thereafter:

(a)     from using in any manner as a trademark or trade name in the United States the same as or similar to the mark "Doctor Multimedia" (to include the name "Modern Doc Media" alone or in combination with any other word or words or design, in connection with designating, distributing, advertising, promoting and/or offering for sale on MDM's website and online business services or not authorized by Plaintiff to be sold in connection with said mark;

(b)     from passing off, inducing or enabling others to sell or pass off their services that are not Plaintiff's or not offered under the control and supervision of Plaintiff and approved by Plaintiff, through the use of the mark  "Doctor Multimedia" or the trade/business name "Modern Doc Media", or formatives thereof;

(c)     from committing any acts calculated to cause purchasers or clients or the public to believe that MDM's business, website, and services are sponsored by, related to or approved or connected with or guaranteed by or offered, marketed and sold under the control and supervision of Plaintiff; and

(d)     from otherwise competing unfairly with Plaintiff in any manner.

(e)     from using the trade or business name "Modern Doc Media" or any formatives thereof in any fashion to include in advertising, in marketing, in contracts, on the MDM website, and/or in the domain name for MDM.

-43-

3.      For a constructive trust of all money wrongfully obtained by Defendants as a result of the wrongful, unfair, illegal, fraudulent and tortious conduct alleged herein.

4.      For an accounting to determine the amount of profits and/or other opportunities that were usurped from Plaintiff and for the purpose of determining the amount of Defendants' profits to disgorge.

5.      For an award of actual and compensatory damages in an amount to be proven at trial.

6.      For restitution of all money wrongfully obtained by Defendants by means of and in connection with the alleged wrongful, unfair, and fraudulent conduct and business practices alleged herein.

7.      For punitive and exemplary damages according to proof;

8.      For damages in the amount of $7 million or more according to proof;

9.      Pre-and post-judgment interest on its damages, together with all costs and expenses; and,

10.     Awarding such other relief as this Court may deem just and proper.

**MURCHISON & CUMMING, LLP**

DATED:  June 6, 2022

_____
         /s/Pamela C. Chalk
Anton N. Handal, Esq.
Pamela C. Chalk, Esq.
Attorneys for Plaintiff

-44-

1

## **JURY DEMAND**

2

3        Plaintiff demands a trial by jury as to all claims so triable.

4
                                          **MURCHISON & CUMMING,  LLP**
5    DATED:  June 6, 2022

6

7                                                  /s/Pamela C. Chalk
                                        _____
8                                        Anton N. Handal, Esq.
                                         Pamela C. Chalk, Esq.
9                                        Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*FIRST AMENDED COMPLAINT*                    *CASE NUMBER 3:22-CV-00131-TWR-BLM*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per CivLR 5.1(h). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery upon their appearance in this matter.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 6th day of June, 2022 at San Diego, California.

DATED:  June 6, 2022            **MURCHISON & CUMMING,  LLP**


                                        /s/Pamela C. Chalk
                                Pamela C. Chalk, Esq.
                                Attorneys for Plaintiff

EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# DOCTOR MULTIMEDIA

**Reg. No. 6,338,612**

**Registered May 04, 2021**

**Int. Cl.: 35, 42**

**Service Mark**

**Principal Register**

Gopher Multimedia  (NEVADA LIMITED LIABILITY COMPANY)
5348 Vegas Drive
Las Vegas, NEVADA 89108

CLASS 35: Online advertising and marketing services in the field of medical services; Online advertising and marketing services in the field of veterinary services; Online advertising and marketing services in the field of dental services; Online advertising and marketing services in the field of chiropractic services; Online advertising and marketing services in the field of pharmacy goods and services; Online advertising and marketing services in the field of podiatry services; Online advertising and marketing services in the field of orthodontic services; Online advertising and marketing services in the field of eye care services; Web site traffic optimization

FIRST USE 7-26-2016; IN COMMERCE 9-10-2016

CLASS 42: Web site design; Web site development for others

FIRST USE 7-26-2016; IN COMMERCE 9-10-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "MULTIMEDIA"

SER. NO. 90-049,874, FILED 07-13-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

