1
2
3
4
5
6
7

8             UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11   GOPHER MEDIA LLC dba DOCTOR          Case No.:  3:22-CV-00131 TWR (DDL)
     MULTIMEDIA, a Nevada limited liability
12   corporation,
                                          **ORDER (1) GRANTING IN PART
13                           Plaintiff,   AND DENYING IN PART
                                          DEFENDANTS' SPECIAL MOTION
14   v.                                   TO STRIKE, (2) GRANTING IN
                                          PART AND DENYING IN PART
15   MODERN DOC MEDIA, a California        DEFENDANTS' PARTIAL MOTION
     business entity; THE MODERN MEDIA    TO DISMISS PLAINTIFF'S
16   GROUP LLC, a California limited liability COMPLAINT, AND (3) DENYING
     company; ANDREW HOFFMAN, an          DEFENDANTS' MOTIONS RE:
17   individual; and DOES 1–10, inclusive, SEALING INFORMATION IN
                                          CONNECTION WITH ANTI-SLAPP
18                          Defendants.   MOTION AND REPLY**
19
20
21                                        (ECF Nos. 16, 17, 32)
22

23          Presently before the Court is the Special Motion to Strike (Anti-SLAPP) and

24   Partial Motion to Dismiss (ECF No. 16; ECF No. 16-1, "Mem.") filed by Defendants

25   Modern Doc Media, The Modern Media Group LLC, and Andrew Hoffman, as well as

26   Plaintiff Gopher Media LLC's Response in Opposition (ECF No. 30, "Opp'n") and

27   Defendants' Reply in Support of the Motions (ECF No. 31, "Reply").  Also before the

28   Court are Defendants' Motions re: Sealing of Information in Connection with Anti-

                                          1

SLAPP Motion and Reply (ECF Nos. 17, 32).  The Court held a hearing on these motions on November 17, 2022.  (*See* ECF No. 37.)  Having carefully considered Plaintiff's First Amended Complaint (ECF No. 13, "FAC"), the Parties' arguments, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Special Motion to Strike and Partial Motion to Dismiss and **DENIES** Defendants' requests not to seal documents relating to the anti-SLAPP Motion and Reply as requests for an advisory opinion.

## BACKGROUND

Plaintiff Gopher Media LLC, doing business as Doctor Multimedia, is a digital marketing agency that provides marketing and social media services to a variety of medical professionals including doctors, dentists, and veterinarians.  (FAC ¶¶ 1, 21.)  The organization works to help these professionals grow their businesses online through Pay Per Click campaigns, search engine optimization efforts, and building an online presence. (*Id.* ¶ 22.)  As part of its business, Plaintiff has generated confidential and proprietary information including pricing information, website design strategies, sales presentation information, sales and marketing strategies, client lists, event lists, and information relating to confidential business discussions between Plaintiff and potential or actual clients.  (*Id.* ¶ 23.)  None of this information was intended to be disclosed to anyone outside of Doctor Multimedia.  (*Id.* ¶ 26.)

Defendant Andrew Hoffman previously worked for Plaintiff but was allegedly terminated for poor job performance.  (*Id.* ¶ 27.)  Defendant Hoffman later filed a lawsuit against Plaintiff.  (*Id.* ¶ 28.)  That lawsuit eventually settled, and Plaintiff and Defendant Hoffman subsequently entered into two settlement agreements in which they agreed not to actively solicit the other's customers or disparage one another.  (*Id.* ¶¶ 28, 33–34.) Defendant Hoffman is now the CEO of a different company—The Modern Media Group

/ / /

/ / /

/ / /

LLC, doing business as Modern Doc Media[1]—that competes directly with Plaintiff.  (*Id.* ¶¶ 29, 31, 37.)  Modern Doc Media also does business within the online healthcare and website services market.  (*Id.* ¶ 37.)  Defendant Modern Doc Media conducts business through its website https://moderndocmedia.com, while Plaintiff conducts business through its website https://doctormultimedia.com.  (*Id.* ¶ 49.)

In its First Amended Complaint Plaintiff alleges ten causes of action against Defendants Hoffman and Modern Doc Media: (1) misappropriation of trade secrets under federal law; (2) misappropriation of trade secrets under California law; (3) unfair business practices; (4) false advertising under the Lanham Act; (5) trade libel; (6) trademark infringement; (7) unfair competition; (8) fraud; (9) breach of contract; and (10) cybersquatting.  (FAC ¶¶ 65–228.)  In response, Defendants filed a Special Motion to Strike and Partial Motion to Dismiss, as well as two motions requesting that the Court not seal any of the documents associated with the Parties' prior settlement agreements.  (*See generally* ECF Nos. 16, 16-1, 17, 32.)  Defendants argue that Plaintiff's fraud claim and parts of its breach of contract claim should be stricken pursuant to California Code of Civil Procedure section 425.16 (anti-SLAPP statute) because they target prior litigation conduct that is protected under the statute.  (Mem. at 8–9, 12–13.)  Defendants also argue that Plaintiff has failed to state claims for misappropriation of trade secrets, false advertising, trade libel, and cybersquatting.  (*Id.* at 9–10, 17–25.)

## LEGAL STANDARD

## I.   Motion to Strike Pursuant to California Code of Civil Procedure § 425.16

California has a special statute known as an "anti-SLAPP statute,"[2] which provides that "[a] cause of action against a person arising from any act of that person in

---

[1]   The Modern Media Group LLC and Modern Doc Media are listed as two parties in the First Amended Complaint, but they are not separate entities.  (Mem. at 7 n.1.)  Instead, The Modern Media Group LLC does business as Modern Doc Media.  (*Id.*).

[2]   "SLAPP" is an acronym for "strategic lawsuit against public participation."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 899 n.1 (9th Cir. 2010).

furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003); *Hilton*, 599 F.3d at 899 n.1.  "Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009).  A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims, but the anti-SLAPP statute does not apply to claims asserted under federal law. *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 n.5 (9th Cir. 2013); *Hilton*, 599 F.3d at 901.

"The analysis of an anti-SLAPP motion proceeds in two steps." *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 321 (2017).  At step one, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from protected activity.'" *Id.* (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 819 (2011)).  "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).  The "critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Id.*  Only if the Court determines that relief is sought based on protected activity does it reach the second step. *See Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

At step two, the burden shifts to Plaintiff to demonstrate a probability of prevailing on the merits, which requires Plaintiff to show that "each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.*; *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 63 (2002); *see Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021).  The Court "will review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n*

*of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).   When an anti-SLAPP motion to strike challenges the legal sufficiency of a claim, "a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."[3]   *Id.* at 834.   If the plaintiff ultimately fails to meet its burden at the second step, the claim based on protected activity is stricken and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Baral*, 1 Cal. 5th at 396.

## II.   Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).   "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"   *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

---

[3]       A court employs the Federal Rule of Civil Procedure 56 standard when an anti-SLAPP motion challenges the factual sufficiency of a claim.   *See Planned Parenthood*, 890 F.3d at 834.   Here, Defendant challenges both the factual sufficiency and the legal sufficiency of Plaintiff's fraud claim. (Mem. at 13–17.)   But because the legal insufficiency of Plaintiff's claim is dispositive, the Court need not additionally apply the Rule 56 standard, which would also require discovery before the Court could rule on the anti-SLAPP motion.   *Planned Parenthood*, 890 F.3d at 834.   Instead, the Court applies the Rule 12(b)(6) standard.   *See id*. ("[D]istrict court correctly applied a Rule 12(b)(6) standard to Defendants' Motion to Strike challenging the legal sufficiency of Plaintiffs' complaint, and the district court did not err in declining to evaluate the factual sufficiency of the complaint at the pleading stage.").

defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile." *Id.*

## ANALYSIS

## I.    Defendants' Special Motion to Strike Portions of the First Amended Complaint

Defendants seek to strike Plaintiff's fraud cause of action and fraud-related allegations in the First Amended Complaint under California's anti-SLAPP statute. (Mem. at 8, 12–17; *see* FAC ¶¶ 28, 30, 171–93, 195, 197.)  They argue that: (1) Plaintiff's fraud claim, and related allegations, target protected activity conducted during settlement negotiations, such that the first step of the anti-SLAPP analysis is met; and (2) Plaintiff's fraud claim lacks minimal merit, satisfying step two of the anti-SLAPP analysis. (Mem. at 12–13.)  More specifically, Defendants contend that under step two

Plaintiff's fraud claim lacks merit because the litigation privilege bars liability and Plaintiff's claim is not supported by sufficient evidence.  (*Id.* at 13.)  Plaintiff disagrees, arguing that the gravamen of its fraud allegations does not target protected conduct.  (Opp'n at 21, 26–30.)  Instead, Plaintiff contends that any protected activity is merely background information or evidence of the wrong Defendant Hoffman committed, such that the anti-SLAPP statute does not apply.  (*Id.*)  Plaintiff also argues that even if Defendants meet step one of the anti-SLAPP analysis, its fraud claim is likely to succeed on the merits because the litigation privilege does not apply and sufficient evidence supports the elements of the claim.  (*Id.* at 30–33.)

Under step one of the anti-SLAPP analysis, settlement negotiations while a suit is pending are protected communications—"they involve communications in connection with a matter pending before or under consideration by an official body, and so fall within the scope of" California Code of Civil Procedure section 425.16(e)(2).  *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1024 (2021); *see O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC*, 42 Cal. App. 5th 546, 566 (2019); *Suarez v. Trigg Lab'ys, Inc.*, 3 Cal. App. 5th 118, 123 (2016).  For example, the California Supreme Court in *Navellier* found that defendant's alleged misrepresentation concerning his intent to be bound by the release he signed in a previous federal action was protected activity under the anti-SLAPP statute.  *Navellier*, 29 Cal. 4th at 87, 90.  The protection under the anti-SLAPP statute applies "even against allegations of fraudulent promises made in the settlement process."  *Suarez*, 3 Cal. App. 5th at 123; *see Navarro v. v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 841–42 (2005).  In fact, "[m]isrepresentation or failure to disclose can be protected petitioning activity" under the statute.  *Suarez*, 3 Cal. App. 5th at 124.

Here, Plaintiff contends the gravamen of its fraud claim is "that [Defendant] Hoffman fraudulently induced Plaintiff to enter the [prior settlement] agreement by falsely promising and negligently representing he would not solicit Plaintiff's client or disparage Plaintiff."  (Opp'n at 28.)  Plaintiff focuses on Defendant "Hoffman's concealment of his intent not to keep his promises in the agreement or to honor the

agreement." (*Id.* at 29 (original formatting omitted).)  So defined, Defendant Hoffman's alleged conduct falls within protected activity under the anti-SLAPP statute as discussed in California case law, even including any fraudulent promises.  Defendants have therefore met step one of the anti-SLAPP analysis.

The Court turns next to step two of the analysis.  Defendant argues Plaintiff has failed to meet its burden of showing a legally sufficient and factually substantiated fraud claim.  (Mem. at 13–17.)  Specifically, Defendants contend Plaintiff's fraud claim is barred by the litigation privilege.  (*Id.* at 16–17.)  "The litigation privilege is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.'"  *Trinity Risk Mgmt., LLC v. Simplified Lab. Staffing Sols., Inc.*, 59 Cal. App. 5th 995, 1006 (2021) (quoting *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006)).  Thus, Plaintiff cannot establish a probability of prevailing if the litigation privilege precludes a finding of liability on Plaintiff's fraud claim.  *See id.*

Under California law, statements made during settlement negotiations are absolutely privileged pursuant to California Civil Code section 47(b).  *See Saunders v. Weissburg & Aronson*, 74 Cal. App. 4th 869, 875 (1999); *Navarro*, 134 Cal. App. 4th at 843–44.  This litigation privilege applies even if such statements are fraudulent.  *Bonni v. St. Joseph Health Sys.*, 83 Cal. App. 5th 288, 304 (2022).  As such, the litigation privilege applies to Plaintiff's fraud claim since that claim is premised on Defendant Hoffman's alleged fraudulent promises and misrepresentations during settlement discussions in prior litigation.  (*See* Opp'n at 30.)

Plaintiff's argument that the litigation privilege does not apply to this case of "extrinsic fraud" is misguided.  (*Id.* at 30–31.)  To start, the Court is not convinced this is a case of extrinsic fraud.[4]  *See Navarro*, 134 Cal. App. 4th at 844 (finding the plaintiff's

_____

[4]       "'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently

allegation—that the defendant lied about its intention regarding settlement terms—an allegation of intrinsic, not extrinsic, fraud since the plaintiff had the opportunity to negotiate more favorable terms or to reject the settlement altogether). But the Court need not decide that issue because even if the settlement agreement, which resulted in a judgment in the Parties' prior case, was "procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment [or settlement], not to sue in tort." *Bonni*, 83 Cal. App. 5th at 304 (internal quotation marks omitted). Thus, Plaintiff "may pursue a claim to rescind the . . . settlement but . . . tort claims based on the settlement negotiations are barred."[5] *Id.* at 305.

For all these reasons, the Court **GRANTS** Defendants' Special Motion to Strike Plaintiff's fraud claim. Because nothing in the record suggests Plaintiff could cure the deficiencies in this claim, making any amendment futile, the Court **DENIES** Plaintiff leave to amend its fraud claim.

Defendants also move pursuant to the anti-SLAPP statute to strike Plaintiff's fraud-related allegations included in the General Allegations section of the First Amended Complaint and under the breach of contract claim (FAC ¶¶ 28, 30, 195, 197). (Mem. at 13.) These allegations, which are separate from similar statements included directly under the fraud cause of action, must be stricken as well unless they support a distinct claim in the Complaint on which Plaintiff has a shown a probability of prevailing.

---

prevented from fully participating in the proceeding. . . . Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). . . . The essence of extrinsic fraud is one party's preventing the other from having his day in court.' . . . 'By contrast, fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so. . . .'" *Navarro*, 134 Cal. App. 4th at 844 (citations omitted).

[5]    Because Defendant is correct that Plaintiff has failed to show a legally sufficient fraud claim, the Court declines to delve into the fact intensive discussion about whether Plaintiff's fraud claim is factually substantiated. (*See supra* footnote 3.)

*See Baral*, 1 Cal. 5th at 396.  Plaintiff acknowledges that the breach of contract claim only involves conduct occurring after execution of the settlement agreement.  (Opp'n at 23–25.)   Thus, the fraud-related allegations contained within the breach of contract section of the First Amended Complaint, which pertain to conduct that occurred during the settlement negotiations, are irrelevant and properly stricken.  Defendants' Special Motion to Strike paragraphs 30 and 197 is **GRANTED**.  The first two sentences of paragraphs 28 and 195 do not discuss alleged fraud within the settlement negotiations (and Defendants do not argue that the fact that Plaintiff and Defendants entered into settlement agreements should be stricken from the First Amended Complaint); thus, the Court **PARTIALLY GRANTS** Defendants' Special Motion to Strike paragraphs 28 and 195.  Only the third sentences of paragraphs 28 and 195 shall be stricken.

## II.   Defendants' Partial Motion to Dismiss Enumerated Claims

Defendant also seeks to dismiss Plaintiff's claims for: (1) false advertising; (2) trade libel; (3) misappropriation of trade secrets; and (4) cybersquatting pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.   *False Advertising*

"The protections of the Lanham Act [15 U.S.C. §§1051–1141n] seek to guard against deceptive practices in the marketplace and prohibit conduct that will create a likelihood of confusion." *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1143 (S.D. Cal. 2021).   Section 1125(a), in particular, creates two bases of liability: (1) false association under § 1125(a)(1)(A) and (2) false advertising under § 1125(a)(1)(B).  *Id.* Each claim has its own set of elements.  *See id.*   Here, Defendants seek to dismiss Plaintiff's false advertising claim (fourth cause of action) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF 16 at 2; Mem. at 17–20.)  Plaintiff contends its *false advertising* claim is sufficiently pled, relying largely on arguments relating to a *false association* claim.  (Opp'n at 12–15.)  It appears Plaintiff seeks to bring a separate cause of action for false association (seventh cause of action titled false designation of origin) and Defendants do not seek to dismiss that claim.  (*See* FAC

¶¶ 157–170; ECF No. 16 at 2.)  The Court therefore focuses solely on Plaintiff's false advertising allegations.

A false advertising claim consists of five elements: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (original formatting omitted); *see* 15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

While the Ninth Circuit has not decided whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Lanham Act claims, the majority of district courts in this Circuit apply Rule 9(b) to claims that are grounded in fraud, such as false advertising claims arising under the Lanham Act. *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1102 & n.6, 1103 (N.D. Cal. 2021); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010); *see Waste & Compliance Mgmt., Inc. v. Stericycle, Inc.*, No. 17-cv-0967 DSM (NLS), 2017 WL 4358145, at *2 (S.D. Cal. Oct. 2, 2017) ("False advertising claims are subject to heightened pleading standards under Rule 9(b).").  This heightened pleading standard only applies to the specifics of the alleged misrepresentations, not to other aspects of Plaintiff's claim such as reliance and damages. *Waste & Compliance Mgmt., Inc.*, 2017 WL 4358145, at *2.  "To satisfy Rule 9(b), Plaintiff must state the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *EcoDisc Tech. AG*, 711 F. Supp. 2d at 1085 (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1401)  Plaintiff must also "explain what is false or misleading about the statement made and why it is false." *Waste & Compliance Mgmt., Inc.*, 2017

WL 4358145, at *2; *see EcoDisc Tech. AG*, 711 F. Supp. 2d at 1085.  In other words, Plaintiff "must allege the 'who, what, where, when, and how' of the misconduct."  *Waste & Compliance Mgmt., Inc.*, 2017 WL 4358145, at *2.

Defendants argue that Plaintiff's false advertising claim fails to state a claim because the First Amended Complaint does not provide specific facts to support an allegation that Defendants made a false statement.  (Mem. at 17–18.)  Plaintiff contends its false advertising claim is sufficient, relying largely on paragraphs of the First Amended Complaint that support its false association claim instead of its false advertising claim.  (Opp'n at 14–15.)  The only paragraph of the First Amended Complaint Plaintiff points to in support of any false statements (and the only paragraph the Court could find) is paragraph 16, which reads: "Defendants have embarked in an unlawful campaign to convince potential and actual clients to stop using Plaintiff's services or be Plaintiff's clients alleging that Plaintiff's services are inferior, Plaintiff is untrustworthy, Plaintiff is not modern, and Plaintiff engages in deceptive marketing practices.  Such allegations are maliciously false."  (Opp'n at 14; FAC ¶ 16.)  But these two sentences fall far short of the heightened pleading requirements.  At a minimum, the sentences fail to include any information about the when, where, and how.

Plaintiff's argument that the name "Modern Doc Media" is a false statement in a commercial advertisement because it attempts to show that Defendant Modern Doc Media is more modern than Plaintiff fails for similar reasons.  (Opp'n at 14.)  First, Plaintiff does not explain how a company name alone is a commercial advertisement or cite any caselaw for that proposition.  *See, e.g.*, *JS Led Tech. Corp. v. Zhang*, No. CV 14-02250-RGK (PJWx), 2014 WL 12561075, at *7 (C.D. Cal. Aug. 7, 2014) (dismissing in part plaintiff's false advertising claim because plaintiff did not cite any case law for the proposition that a web address alone was a commercial advertisement).  Nor does Plaintiff explain what is false about the name "Modern Doc Media."  Second, Plaintiff's allegation that the name "Modern Doc Media" is misleading and causes confusion between the two companies, does not state a distinct claim for false advertising.  (Opp'n

at 14.)  That allegation falls under the false association/false designation of origin claim under § 1125(a)(1)(A) alleged later in the First Amended Complaint.  *See JS Led Tech. Corp.*, 2014 WL 12561075, at *7.

For all these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's false advertising claim.  Because it is possible that Plaintiff could plead adequate facts to support a false advertising claim, the Court **GRANTS** Plaintiff leave to amend.

### B.   Trade Libel

"Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner."  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001).  "The tort encompasses 'all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so.'"  *Id.* (citation omitted).  The "false and misleading statement '(1) must specifically refer to the plaintiff's product or business and (2) must clearly derogate that product or business.  Each requirement must be satisfied by express mention or by clear implication.'"  *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV 15-04125 MMM (JEMx), 2015 WL 12731920, at *15 (C.D. Cal. Sept. 21, 2015) (citation omitted).  "To plead trade libel, [P]laintiff must allege that [D]efendants made a statement about its products—not their own."  *Id.*  "Opinions will not support a cause of action for trade libel."  *ComputerXpress, Inc.*, 93 Cal. App. 4th at 1010–11.

Further, a "trade libel claim requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages."  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019) (citation omitted).  Plaintiff "must allege (1) who made the statements, (2) to whom the statements were made, (3) the time and place of publication, and (4) the substance of the statements."  *Id.* (quoting *NPK Indus. v. Hunter*, No. 15-cv-00811-SI, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015)).  Plaintiff "must also prove that the statement played 'a material and substantial

part in inducing others not to deal with [Plaintiff].'" *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (citation omitted).  As for special damages, under Federal Rule of Civil Procedure 9(g), "the pleader must state special damages with specificity," such that Plaintiff must "identify particular customers and transactions of which it was deprived as a result of the libel." *Id.* (quoting *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004), *disapproved of on other grounds by Baral*, 1 Cal. 5th at 385–86).  Plaintiff cannot rely on a general decline in business arising from the false statement. *AlterG, Inc.*, 388 F. Supp. 3d at 1154.

Here, Defendants argue Plaintiff's trade libel claim fails to state a claim because the use of the name "Modern Doc Media" constitutes, if anything, an opinion rather than a false statement and the name does not refer to Plaintiff or its products.  (Mem. at 20–21.)  Plaintiff argues its trade libel claim is sufficiently plead, citing to specific paragraphs in the First Amended Complaint.[6]  (Opp'n at 15–16.)  From what the Court can tell, Plaintiff claims two distinct circumstances of trade libel: (1) Defendants told potential and actual clients that "Plaintiff's services are inferior, Plaintiff is untrustworthy, Plaintiff is not modern, and Plaintiff engages in deceptive marketing practices" (FAC ¶ 16) and (2) Defendants' use of the name "Modern Doc Media" disparages Plaintiff because it is an attempt to say that Plaintiff is not modern (FAC ¶ 51).  Defendants are correct that Plaintiff's trade libel allegations fail to state a claim for a few reasons.

First, and most detrimental to Plaintiff's claim, Plaintiff has failed to plead the "special damages" element of a trade libel claim—Plaintiff has not identified any particular customers and transactions of which it was deprived.  *See AlterG, Inc.*, 388 F. Supp. 3d at 1154.  Nor has Plaintiff shown that any of the allegedly false statements

---

[6]   Of the paragraphs in the First Amended Complaint that Plaintiff contends support its trade libel claim, only a few mention anything about disparagement, false statements, or anything else related to trade libel.  (*See* Opp'n at 16; FAC ¶¶ 16, 36, 38, 51, 53, 54, 136 (from the Court's review of the First Amended Complaint, these are the only paragraphs providing assertions relating to trade libel).)

played a material and substantial role in inducing clients not to deal with Plaintiff. *See id.* at 1154–55. Nothing in the First Amended Complaint explains whether any potential or actual clients chose Modern Doc Media's services over Plaintiff's services because of any false statements. Plaintiff simply states that "at least 4 of Plaintiff's actual clients" ended their contract with Plaintiff in favor of Modern Doc Media. (FAC ¶ 45.) But that claim does not identify the customers, allege the value of any particular transaction, and most importantly, does not show that the clients' decisions were attributable to any false statements by Defendants. *See AlterG, Inc.*, 388 F. Supp. 3d at 1154–55.

Second, even if Plaintiff had properly pled the special damages element, Plaintiff does not allege the time or place of the specific publications Plaintiff claims are disparaging (*see* FAC ¶ 16). *See AlterG, Inc.*, 388 F. Supp. 3d at 1154.

Third, Plaintiff's allegation that Defendants' use of the name "Modern Doc Media" on Modern Media Group LLC's website disparages Plaintiff by suggesting that Plaintiff is not modern fails to state a claim. Even assuming a company's use of a name could be a false statement or publication,[7] Plaintiff has not shown how the name "Modern Doc Media" refers to or clearly implicates Plaintiff or its services. Furthermore, Plaintiff has failed to explain how using "modern" to describe one's own company is itself sufficient to plead trade libel. *See GeoData Sys. Mgmt., Inc.*, 2015 WL 12731920, at *15 ("To plead trade libel, [P]laintiff must allege that [D]efendants made a statement about its products—not their own.").

/ / /

/ / /

---

[7]     Throughout the First Amended Complaint, Plaintiff contends Defendants' use of the name "Modern Doc Media" will cause confusion among consumers because it is too similar to Plaintiff's name "Doctor Multimedia." (FAC ¶¶ 40, 42 45, 49, 52, 61, 126, 157–70.) Plaintiff also alleges that Defendants have infringed on Plaintiff's trademark by using a similar name. (FAC ¶¶ 140–156.) So it is difficult to see how an allegedly similar name that would cause confusion in the marketplace could also be disparaging. *See GeoData Sys. Mgmt., Inc.*, 2015 WL 12731920, at *15 ("A defendant does not make a disparaging statement concerning another's product simply by imitating it or otherwise infringing the intellectual property associated with it.").

For all these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's trade libel claim. Because it is possible that Plaintiff could plead adequate facts to support a trade libel claim, the Court **GRANTS** Plaintiff leave to amend.

### C.    *Misappropriation of Trade Secrets*

Defendants also move to dismiss Plaintiff's trade secret misappropriation claims under both federal and state law. (Mem. at 21–25.) They argue the First Amended Complaint does not plausibly plead any trade secrets or misappropriation. (*Id.*) Plaintiff disagrees, arguing it has provided a detailed description of the trade secrets and has sufficiently alleged misappropriation. (Opp'n at 17–18.) Defendants are correct.

The Defend Trade Secret Act, *see* 18 U.S.C. § 1836 *et seq.*, and the California Uniform Trade Secrets Act, *see* Cal. Civ. Code § 3426 *et seq.*, share the same pleading standards: Plaintiff "must allege that (1) it is the owner of a trade secret; (2) that [Defendants] misappropriated the trade secret; and (3) that it was damaged by [Defendants'] actions." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880–81 (N.D. Cal. 2018). The alleged trade secrets must be specifically identified—Plaintiff need not spell out all the details, but it must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit [Defendants] to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation omitted); *see Alta Devices, Inc.*, 343 F. Supp. 3d at 881; *GeoData Sys. Mgmt., Inc.*, 2015 WL 12731920, at *11; *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, *7 (C.D. Cal. Apr. 5, 2011) (finding that plaintiff did not adequately allege a trade secret misappropriation claim in part because the complaint neither alleged which documents identified in the complaint contained trade secrets nor described any trade secrets with sufficient particularity).

For example, general allegations of "business plans and strategies" are not sufficiently pled trade secrets. *Qpid.me, Inc. v. Schrom*, No. 13-cv-583-IEG (NLS), 2013

3:22-CV-00131 TWR (DDL)

WL 4833990, at *5 (S.D. Cal. Sept. 9, 2013).   Nor are allegations seeking trade secret protection for "everything" related to a product, *GeoData Sys. Mgmt., Inc.*, 2015 WL 12731920, at *12, or general allegations relating to manufacturing, packaging, and marketing "protocols," *Logtale, Ltd. v. IKOR, Inc.*, No. C 11-5452 CW, 2013 WL 4427254, at *5 (N.D. Cal. Aug. 14, 2013).   Trade secrets set out in "broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets" are insufficient. *Vendavo, Inc.*, 2018 WL 1456697, at *3–4.

Here, Plaintiff describes its alleged trade secrets in much the same insufficient way the plaintiffs in *Vendavo*, *Qpid.me*, and *GeoData* did.   Plaintiff claims its trade secrets "include but are not limited to the proprietary, confidential information related to its pricing information; website design strategies[;] sales presentation information; sales strategies; marketing strategies; client lists; convention and meeting events list(s); sales scripts; knowledge of who the key employees are within the companies of their clients or potential clients; and, information concerning the existence, status, and/or the substance of confidential business discussions between Plaintiff and potential or actual clients." (FAC ¶ 23.)   With this description, it is hard to imagine what components of Plaintiff's company are not alleged to be trade secrets.   This list detailing types of information that may qualify as trade secrets does not describe the trade secrets with sufficient particularity to allow Defendants or the Court to "ascertain the boundaries within which the secret lies." *Vendavo, Inc.*, 2018 WL 1456697, at *4 (citation omitted).   Nor does it allow the Court to determine which types of information Plaintiff has a basis to believe have been misappropriated. *See id*.   Plaintiff's allegations thus fail to sufficiently allege any trade secrets. *See AlterG, Inc.*, 388 F. Supp. 3d at 1145–46.

Plaintiff has also failed to sufficiently allege misappropriation.   Misappropriation means either (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"; or (2) the "disclosure or use of a trade secret of another without express or implied consent."  18 U.S.C. § 1839(5)(A)–(B); *see* Cal. Civ. Code § 3426.1(b)(1)–(2); *Alta Devices, Inc.*, 343

17

F. Supp. 3d at 882.   Plaintiff appears to bring its trade secret claims on both grounds alleging Defendants, through unnamed agents, stole Plaintiff's trade secrets and have used them to modify its business strategy, lure away employees and customers from Plaintiff, and unfairly take away Plaintiff's business.   (FAC ¶¶ 78–79, 81, 83–84, 86, 96–99, 102.)   Plaintiff brings these claims with broad, conclusory statements involving unnamed persons, some of which were former employees of Plaintiff.   (*See, e.g.*, FAC ¶¶ 74 ("Plaintiff has required employees to sign agreements and/or conform to policies that include confidentiality provisions and protect[] the Trade Secrets . . . ."), 75 ("Unknown agents of [Modern Doc Media] agreed to and acknowledged contracts and policies that include confidentiality and non-disclosure provisions."), 78 ("Unknown Agents of [Modern Doc Media] at the behest of [Modern Doc Media] improperly disclosed Plaintiff's Trade Secret Information to [Modern Doc Media] and others.").)

As alleged and considered together, Plaintiff's claims do not supply enough "factual content" to permit this Court "to draw the reasonable inference that [Defendants are] liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   Among other things, Plaintiff does not provide any of the following important information to support its claim: (1) which of Plaintiff's trade secrets, among the ones alleged, Defendants disclosed and used; (2) who improperly disclosed Plaintiff's trade secrets and why it was improper (*see* FAC ¶¶ 78, 102); (3) whether Defendant Hoffman, the only individual Defendant named in the action, signed any agreements relating to Plaintiff's trade secrets; and (4) who at Modern Doc Media had access to Plaintiff's trade secrets "by virtue of their employment and/or business relationship with" Plaintiff (FAC ¶ 82; *see* FAC ¶ 96).   Plaintiff's conclusory allegations, unsupported by adequate factual allegations do not rise above the speculative level.   *See Twombly*, 550 U.S. at 555.   And nothing in Plaintiff's Opposition, which cites only one case stating the elements of a trade secret misappropriation claim, supports a finding otherwise.

For all these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's trade secret misappropriation claims.   Because it is possible that Plaintiff could

plead adequate facts to support a trade secret misappropriation claim, the Court **GRANTS** Plaintiff leave to amend.

### D. Cybersquatting

Finally, Defendants move to dismiss Plaintiff's cybersquatting claim. (Mem. at 25.) Cybersquatting occurs "when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)). "The Anti-Cybersquatting Consumer Protection Act [15 U.S.C. § 1125(d)] establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010). Section 1125(d) provides a non-exhaustive list of factors that courts may consider in determining whether a defendant had a bad faith intent to profit. *See* 15 U.S.C. § 1125(d)(1)(B)(i). But the Court does not need to systematically go through all nine factors because the use of the factors is permissive. *See Children's Miracle Network v. Miracles for Kids, Inc.*, No. 8:18-cv-01227-JLS-KES, 2018 WL 8243998, at *5 (C.D. Cal. Dec. 6, 2018). Instead, the unique circumstances of the case are the most important grounds for finding bad faith. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009).

Here, Defendants argue Plaintiff's cybersquatting cause of action fails to state a claim because it does not adequately allege that Defendants acted "with bad faith intent to profit" from Plaintiff's trademark. (Mem. at 25.) Defendants contend, based on *Children's Miracle Network*, that Plaintiff's statements that "'Defendants were aware of the existence of the Doctor Multimedia mark and website name' and they 'used the Infringing Doman in bad faith and with bad-faith intent to profit from the goodwill' [that

Plaintiff has established]" are insufficient to plead the last element of cybersquatting. (Mem. at 25 (quoting FAC ¶¶ 211, 213).)  Plaintiff disagrees, citing other paragraphs in the First Amended Complaint that it alleges support its allegations of Defendants' bad faith.  (Opp'n at 18 (citing FAC ¶¶ 37–45, 49, 51–53, 61).)

To determine whether Plaintiff has sufficiently alleged a cybersquatting claim, it is helpful to compare Plaintiff's First Amended Complaint to other complaints of alleged cybersquatting.   In *Children's Miracle Network*, the court dismissed the plaintiff's cybersquatting claim explaining that the plaintiff had only stated a legal conclusion when it alleged that the defendant was aware before creating its website that the plaintiff's and the defendant's marks were confusingly similar, and that the defendant had a bad faith intent to profit from the plaintiff's goodwill.  *See* 2018 WL 8243998, at *6.  The court also highlighted that the plaintiff's complaint failed to discuss any of the factors listed in the statute to show bad faith or any unique circumstances showing bad faith with an intent to profit.  *Id.*  Whereas in *NextEngine Ventures, LLC v. Lastar, Inc.*, No. SA CV 13-00463-BRO (JPRx), 2014 WL 12581777, at *5 (C.D. Cal. June 3, 2014), for example, the court found the plaintiff's cybersquatting claims sufficiently pled where the plaintiff alleged that the defendant intended to divert its customers to the infringing domain by using the domain name as a part of a manufacturing business that had not made any bona fide offer of goods or services related to the infringing domain.  The court further highlighted the plaintiff's allegation that the defendant used the infringing domain to redirect users to other commercial websites owned by the defendant.  *Id.*

The allegations in Plaintiff's First Amended Complaint fall somewhere between the two complaints in the cases discussed above.  While Plaintiff's pleading is not as strong as the plaintiff's in *NextEngine Ventures*, Plaintiff has alleged slightly more factual allegations than the plaintiff in *Children's Miracle Network*.  In addition to a conclusory allegation of bad faith intent to profit (FAC ¶ 213), Plaintiff also touches on one of the factors in the statute: Plaintiff states that Defendants target Plaintiff's customer base using a confusingly similar mark to Plaintiff's in order to divert Plaintiff's potential

or actual clients to Defendants' website.   (FAC ¶¶ 39–41, 45, 49.)   *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V).   Given the history between Defendant Hoffman and Plaintiff (FAC ¶ 27), Plaintiff's claims move from merely possible, to sufficiently plausible.   *See Iqbal*, 556 U.S. at 678–79.   While Plaintiff's claim is not strongly pled, it is sufficient to satisfy the 12(b)(6) standard.   The Court therefore **DENIES** Defendants' Motion to Dismiss Plaintiff's cybersquatting claim.

## III.   Defendants' Motions Re: Sealing of Information in Connection with Anti-SLAPP Motion and Reply

In connection with their anti-SLAPP Motion and Reply in support thereof, Defendants filed motions that appear at first glance to be motions to seal documents in this case.   (ECF Nos. 17, 32.)   However, they are better construed as requests for an advisory opinion from the Court—Defendants seek an "order regarding whether information filed with [Defendant] Hoffman's anti-SLAPP motion should be filed under seal or publicly."   (ECF No. 17 at 2.)   But Courts do not provide advisory opinions.   *See Maldonado v. Lynch*, 786 F.3d 1155, 1165 (9th Cir. 2015) (Gould, J., dissenting) (citing *Flast v. Cohen*, 392 U.S. 83, 96 & n.14 (1968)).   Federal courts only decide actual controversies before them and do not give opinions about abstract propositions.   *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337–38 (Fed. Cir. 2007). Defendants preemptively ask the Court not to seal the settlement agreements at issue in this case, and to allow those agreements to be publicly docketed.   (ECF No. 17 at 2; ECF No. 32 at 2.)   Defendants explain that in conferring with Plaintiff about this issue, Plaintiff stated that the settlement agreements could not be filed publicly without breaching the settlement agreement, so they must be filed under seal.   (ECF No. 17 at 2.)

/ / /

/ / /

/ / /

/ / /

/ / /

But Plaintiff has not moved to file any documents under seal, so there is no actual controversy for the Court to resolve.[8]

Because there is no actual controversy before the Court and any order regarding whether the information concerning the settlement agreements at issue should be filed under seal would amount to an advisory opinion, the Court **DENIES** Defendants' requests relating to sealing of information in this case. But the Court gives Plaintiff fourteen (14) days to file any motion to seal prior to allowing public access to the documents on the electronic docket.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Special Motion to Strike and Partial Motion to Dismiss Plaintiff's Complaint (ECF No. 16.) The Court also **DENIES** Defendants' requests for an advisory opinion regarding sealing information relating to the anti-SLAPP Motion and Reply. (ECF No. 17, 32.) Any motion to seal documents must be filed within fourteen (14) days of the electronic docketing of this Order. Finally, the Court **GRANTS** Plaintiff leave to file a second amended complaint curing the deficiencies identified in this Order within thirty (30) days of the electronic docketing of this Order. However, Plaintiff is not permitted to reallege its fraud allegations. *Should Plaintiff elect not to file a timely amended complaint, this action will proceed as to Plaintiff's surviving causes of action.*

**IT IS SO ORDERED.**

Dated: January 20, 2023

Honorable Todd W. Robinson
United States District Judge

---

[8]    Plaintiff misunderstood Defendants' request asking the Court not to seal documents relating to the anti-SLAPP Motion. (*See* Opp'n at 9 ("Plaintiff has not re-filed [Exhibit B] so the Court does not have to review identical motions to seal as to the same document.").)